Treat, C. J. In January, 1838, Simeon Ryder and Charles-; L. Frost recovered a judgment against John A. Halderman and Job Lawrence, in the municipal Court of the city of Alton,, for $279 08. In February, 1838, Krum, as executor of Emerson,c -obtained a judgment against Halderman, in the Madison Circuit •¡.Court, for $533 48. In March, 1838, Halderman conveyed to John Sigerson, Wallace Sigerson and Enos H. Harrison, by deed ■of mortgage, a part of block one, and lot four in block twenty-four, in the city of Alton, to secure the payment of certain promissory notes previously made by Halderman and Lawrence. In April, 1838, Fleming and others obtained a judgment against Halderman and Lawrence, in the Municipal Court of the city of Alton, for $1,23610 ; and, at the same time and before the same Court, Enos Litchfield obtained a judgment against Halderman and Lawrence, for $469 39. In July, 1838, Ryder and Frost recovered another judgment against Halderman and Lawrence, before ;the same Court, for $247 62. In October, 1838, Sigersons and Harrison recovered a judgment in the same Court against Halderman, for $4,624 98; and under an execution issued thereon, -.they became the purchasers of the mortgaged premises for $1,900, sand received a sheriff’s deed therefor, in October, 1840. In -August, 1840, Sigersons and Harrison conveyed to the State "Bank of Illinois, by deed of mortgage, with covenants of warranty. that part of block one embraced in the mortgage from Halderman, and purchased at the Sheriff’s sale, to secure the payment of $4,196, within five years. In April, 1841, Sigersons and Harrison filed a bill in Chancery, in the Madison Circuit Court, against Halderman, Ryder, Frost and the other judgment creditors of Halderman and Lawrence, in which, after setting forth at large all the forgoing proceedings, but the mortgage to the State Bank of Illinois, they proceeded to state as follows: “ Tour orators under this state of facts, are informed and believe, that difficulties may arise in regard to the title of your orators to the said two pieces, parcels and lots of ground, so by youre orators purchased at Sheriff's sale aforesaid, which can only be remedied in a Court of ■ equity. Tour orators, therefore, believing that they are entitled to the possession and ownership of said lots or parcels of ground, free and discharged of all liens, claims, or incumbrances, which the said John A. Halderman, or either of the said judgment creditors, may claim or pretend to set up, pray of your Honor, that the said John A. Halderman, Simeon Ryder, Charles L. Frost, Thomas Fleming, Charles Mclntire, Jasper Corning, Sanderson Robert, Enos Litchfield, and John M. Krmn, executor of WilHam S. Emerson, deceased, may be required to make full, tr6ue and perfect answers to all and singular the charges above set forth, fully and particularly, according to the best of their knowledge, information and belief, as if the same were herein again repeated, and they interrogated thereto; and that the defendants above named, and all persons claiming and to claim the said described lots or parcels of ground in said mortgage mentioned and set forth, may be barred of and from all claims of, in and to the said premises, and every part and parcel thereof, with the appurtenances; and that your orator's title to the same may be confirmed.” Process was served on the defendants, and, at the September term, 1841, the bill was taken for confessed, and a decree entered, that the defendants be forever barred of all claim to the premises in controversy, and that the complainants’ title thereto be fully confirmed and established. In September, 1842, Ryder and Frost assigned the judgment first recovered against Halderman and Lawrence to Buckmaster and Greathouse; and, in November, 1844, under an execution issued thereon, Buckmaster became the purchaser of that part of block one, included in the mortgage to Sigersons and Harrison, for $550, and afterwards obtained a Sheriff’s deed therefor. In May, 1847, the State Bank of Illinois assigned and transferred to Simeon Ryder the notes and mortgage executed to it by Sigersons and Harrison. Ryder had actual notice of the sale to Buckmaster, when he received the assignment of the mortgage; and Buckmaster was well aware of the decree rendered in favor of Sigersons and Harrison, when ho received the assignment of the judgment. In January, 1S48, Ryder, as the assignee of the Bank, filed this bill in Chancery against Buckmaster and others, to forclose the mortgage executed by Sigersons and Harrison. The foregoing state of facts appeared from the pleadings and proofs in the case. On the hearing, the Court made a decree, providing for the foreclosure of the mortgage, and directing, in case of default in the payment of the amount found to be due on the mortgage, that Buckmaster be enjoined from asserting any claim to the mortgaged premises, by virtue of the purchase under the assigned judgment. To reverse that decree, Buckmaster has prosecuted an appeal to this Court. The correctness of the decision made by the Court below, must depend upon the effect to be given to the decree rendered in 1841, in the case of Sigersons and Harrison against Halderman and others. If that decree was binding on Ryder and Frost, who were then the owners of the judgment, it must be held to have the same effect against Buckmaster, who subsequently received an assignment of the judgment, with express notice of the decree. Under such circumstances, he could succeed to no greater rights than Ryder and Frost had as judgment creditors. If the decree operated to discharge the lien of the judgment on the premises now in controversy, the lien could not be revived by a transfer of the judgment to a party fully aware of the previous proceedings. The sole purpose of that suit was to quiet and confirm the title of Sigersons and Harrison to the premises in question. It was peculiarly a matter of equitable cognizance. All of the parties interested in the property, except the State Bank of Illinois, were made defendants. The object of the proceeding was clearly set forth in the bill. The complainants claimed to hold the premises, free from all liens of the other judgment creditors of Halderman. The validity of their liens, as against the complainants, was directly drawn in question by the allegations of the bill. The defendants were fully apprised of the grounds on which the complainants relied, and were distinctly called on to meet and controvert their exclusive claim to the property. They were regularly brought before the Court, and an opportunity afforded them to set up and insist upon their rights. The Court thus acquired full jurisdiction of the subject matter of the suit, and of the persons of the parties; and it proceeded to enter a decree affirming the title of the complainants to the premises. The decree was undoubtedly erroneous as to Ryder and Frost, and, in a direct proceeding for the purpose, might have been reversed. But, it by no means follows, that it can be declared invalid in this collateral proceeding. The only inquiry now is, had the Court pronouncing the decree authority to adjudicate upon the rights of the parties in respect of the property ; not whether its decision was in accordance with the principles of equity. If the Court had such authority, and proceeded to exercise it, the decree, however inequitable or erroneous, must be held binding when drawn in question collaterally. This is an inflexible rule of the law, which has been repeatedly recognized by this Court. Buckmaster v. Carlin, 3 Scammon, 104; Swiggart v. Harber, 4 ibid, 364; Rigg v. Cook, 4 Gilman, 336; Young v. Lorain, 11 Illinois, 624. There can be no doubt of the validity of the decree. It is conclusive on the parties, while it remains in force. Its errors can only be inquired into and corrected, in a direct proceeding instituted for the purpose. The complainants were entitled to the full benefit of the decree. The confirmation of their title, inured to the benefit of the State Bank of Illinois, to which they had previously mortgaged the property with covenants of title. The proceeding was not adverse to the Bank, but in furtherance of its interests. Although the Bank was a proper party, yet the fact that it was not made one, did not defeat the jurisdiction of the Court, nor prevent the decree from inuring to its benefit. From the rendition of the decree, the Bank held the premises discharged of the liens of the judgment creditors. It transferred all of its interests to the complainant in the present suit. He thereby succeeded to all of the rights derived by Sigersons and Harrison by the purchase at the Sheriff’s sale, and by the decree establishing their title under that purchase. Buckmaster acquired no title by his purchase under the judgment, because the lien of the judgment, as respects this property, was previously divested by the decree. There is no force in the position, that Ryder is estopped by the assignment of the judgment from asserting title against a purchaser under it. He did not, either expressly or by implication, covenant that the judgment was a subsisting lien on this particular property. He simply transferred whatever interest he then had as a judgment creditor. The decree already exempted this property from the operation of the judgment, but, in all other respects, it left the judgment in lull force against Halderman and Lawrence. The decree of the Circuit Court is affirmed, with costs. Decree Affirmed.