# SUPREME COURT

### OF

# I L L I N O I S.

## THIRD GRAND DIVISION.

### APRIL TERM, 1867.

## MINARD T. VIELEY

### *v.*

## HUGH THOMPSON *et al.*

1. CHANCERY — *motion to dismiss before answer.* Although irregular and unknown to correct chancery practice, a motion to dismiss a bill, interposed before answer, and acted upon by the court, must be held to have the same effect as a demurrer.

2. TAX — *levy of special.* To make the levy of a special tax valid, every requirement of the law authorizing it must be strictly complied with.

3. INJUNCTION — *to restrain collection of tax.* A court of chancery will take jurisdiction and restrain by injunction the collection of a tax, if not authorized by law, or imposed on property exempt from taxation, or where the assessment was vitiated by fraud, or the tax-payer likely to suffer irreparable injury, or if the persons levying the same are not officers *de jure* or *de facto.*

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES R. STARR, Judge, presiding.

The facts of the case sufficiently appear in the opinion of court.

Mr. CHARLES J. BEATTIE, for the appellant.

Messrs. COLLINS, PERRY & PAYSON, and Messrs. HARDING & FOSDICK, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed in the Livingston Circuit Court by Minard T. Vieley against Hugh Thompson, Wm. R. Vealch and James H. Carter, to enjoin the collection of a bounty tax levied in the town of Pleasant Ridge. The bill alleges, that the town on the 3d day of February, 1865, contained ninety-five legal voters; that on that day forty-one of those voters came together and held an election, and voted for and against levying a bounty tax upon all the taxable property in the town; that there were thirty-nine votes for, and two against, levying the tax; that the supervisor, assessor and collector of the town determined, that a tax of three per cent should be levied on the assessment of 1865, and certified the levy of the same to the county clerk, and that he had extended the same in the collector's warrant; that the treasurer was about to enforce the collection of the same; that complainant was the owner of two hundred and eighty acres of land, upon which this tax had been levied.

The bill alleges, that there were no volunteers, drafted men or substitutes furnished by the town after the first day of February, 1865; that the supervisor, assessor and collector of the town issued bonds to each of the persons who voted in favor of the tax, payable in 1866, and to thirty-three of the same persons, payable in 1867, all bearing ten, per cent; that they issued bonds to themselves in like manner; that the bonds were not issued for the purpose of paying any indebtedness of the town, nor to pay bounties to volunteers, substitutes or drafted men, who enlisted after the 2d day of February, 1865, nor for the purpose of paying bounties to volunteers, substitutes

or drafted men, who had entered the service prior to that date, or for any legal or corporate purpose; but that the bonds were issued unlawfully and fraudulently for the purpose of paying certain sums of money formerly subscribed by the parties, to whom the bonds were issued to raise a fund, to procure substitutes to save themselves, and each of them, from being drafted into the army of the United States; that they severally gave such sums for their individual benefit, and not as a loan to the town; that it never received any consideration for the bonds, from any person receiving the same.

A temporary injunction was granted. A summons was issued and served on the defendants; they entered a motion to dissolve the injunction and dismiss the bill. On a hearing, the court below allowed the motion, and rendered a decree dissolving the injunction and dismissing the bill. Suggestions of damages were filed, and the court assessed the same, and rendered a decree for $100 in favor of defendants, and awarded execution for its collection. To reverse that decree the case is brought to this court, and various errors are assigned.

Although irregular and unknown to correct chancery practice, a motion to dismiss a bill, interposed before answer, and acted upon by the court, must be held to have the same effect as a demurrer. If, then, it must be treated as a demurrer, the allegations of the bill must be considered as true. Was the complainant entitled to relief, on the facts stated in his bill, admitting them to be true?

The only law to which we have been referred, under which authority to issue these bonds can be claimed, is the act of 1865. Private Laws, vol. 1, p. 102. By the first section of that act, the various towns of the several counties named, are authorized to levy a tax of not more than three per cent on the taxable property, to pay bounties to volunteers, substitutes, and drafted men, who might thereafter enlist, or be drafted into the army. The second section declares that, when any ten legal voters of any town, shall make a request in writing, it shall be the duty of the supervisor to call a special election within five days after the request, to determine whether such tax shall be

levied, by posting notices in three of the most public places in the town, at least ten days next previous to the election. The notices are required to state the object of the election.

By taxation the citizen is deprived of his property to the extent of the sum levied. It operates to transfer that amount from him, to the purpose for which it is levied. And it is a constitutional right, enjoyed by every person, that he shall be protected in the enjoyment of his property, and that he shall not be deprived of it, except by the judgment of his peers or the law of the land. Under this provision it is not a mere unmeaning ceremony which the law has imposed, when it has required certain acts to be performed, in taking steps to levy a tax which deprives the citizen of his property; such requirements are generally essential to the validity of the tax. No one in the case under consideration would contend, that the town officers, without a vote having been first had, could legally impose a tax for the purposes contemplated by the act, nor could they levy a tax for any purpose unauthorized by law.

This being so, before they could act, in returning the certificate to the county clerk, the law has declared, that they shall be authorized by a majority of the voters of the town. It is from the consent of the voters, alone, that their authority is derived; until that is had they are powerless to act, and their consent must be obtained in the mode prescribed by law; and it has required, that it shall be by a vote for and against the imposition of the tax, and for the purpose of having a fair expression of the will of the tax payers, an opportunity was intended by the law makers, to be given to the voters to express their wishes. Hence the requirement, that a notice should be given by the persons, and in the manner prescribed. This notice was intended to be, and is, essential to the validity of the election. It was indispensable to the legal exercise of the power of levying the tax. It was important to prevent fraud and oppression, and was therefore made indispensable. Without the notice, an election could not be legally held, and without a legal election resulting in favor of the tax, no power was conferred on the town officers to levy the tax.

It then appearing, that the vote was taken on the next day after the passage of the law, it is apparent that the ten days' notice could not possibly have been given, and such a notice being indispensable to the exercise of the power to levy the tax, it follows that it was unauthorized.

It only remains to be determined whether a court of chancery will take jurisdiction to restrain the collection of this tax. It has been held by this court, that equity will not interpose its power to prevent the collection of a tax, simply for mere irregularities. If, however, the tax is not authorized by law, or, if authorized, it is imposed upon property exempt from the burden, it is otherwise. *Chicago, Burlington & Quincy R. R.* v. *Frary*, 22 Ill. 34; *Munson* v. *Miner*, 22 id. 595; *Metz* v. *Anderson*, 23 id. 463. It has been held, that where a tax is attempted to be levied for the benefit of the officers making the levy, corruptly, equity will relieve. *Scholfield* v. *Watkins*, 22 Ill. 66; *Merritt* v. *Farris*, id. 308; *Ryan* v. *Anderson*, 25 id. 372. In the case of *McBride* v. *The City of Chicago*, 22 id. 574, it was said if the assessment was vitiated by fraud, or the tax payer was likely to suffer irreparable injury, or if the persons levying the same were not officers *de jure* or *de facto*, then equity might afford relief, but would not for mere irregularity.

In this case, if the allegations of the bill are true, and they must, for the purpose of the motion, be so held, it is manifest that the whole proceeding was a fraud upon the other tax-payers. The meeting is charged to have been held without the notice required by the law. Those attending (with the exception of two) had paid money to free themselves from the draft; and voted a tax on others to refund to themselves money, without any legal or moral obligation resting upon the town or inhabitants thereof, for repayment of the money thus appropriated. This we regard as such a fraud as requires a court of equity to stay its collection.

Again, the tax was wholly unauthorized, as there were no volunteers, substitutes, or drafted men who went into the service after the passage of the law, and it only authorizes the imposition of the tax for the purpose of raising a fund

for the payment of such recruits to the army; unless there was at least a reasonable probability that there would be such, there was no power to levy a tax for the accumulation of such a fund. In this case, the bill contains the allegation that the quota of the town had been filled, and the necessity for troops having ceased to exist, it could not have been necessary to collect the tax. The decree of the court below is reversed and the cause remanded.

*Decree reversed.*