Nelson, D. J.
The complainant, an alien, files his bill in equity on behalf of himself and other holders of any of the *296 $3,000,000 issue of bonds by the First Division of the Saint Paul & Pacific Railroad Company, of the date of March 1, 1864, who shall come in and contribute to the expenses of this suit. Relief is prayed against a decree charged to have been obtained in a state court of Minnesota by the fraudulent practices of some of the defendants, and a sale thereunder in fraud of the rights of complainant and others similarly situated.
The bill alleges that a suit was brought in the court of common pleas of Ramsey county, Minnesota, to foreclose a trust deed executed by the First Division of the Saint Paul & Pacific Railroad Company to secure $3,000,000 of bonds, and on March 24, 1879, a decree of foreclosure was entered by consent of parties to the record in said suit, no answer having been interposed to the complaint.
The relief prayed for is substantially that the said mortgage be declared by the court to be a subsisting and valid lien upon the property described therein, and the rights of the holders of all of said bonds outstanding be maintained, and they be allowed to prove them; that the sale of said property under the said decree of the said state court, and the deed executed to the purchaser thereupon, be declared to be fraudulent and void, and be set aside and cancelled; that a receiver be appointed to take possession of the property, the purchasers at said sale enjoined from interfering therewith, and account for the earnings and income while in their possession, and that the property be sold under the direction of this court for the benefit of all the bona fide bond holders. General relief is also asked. A demurrer is interposed by the defendants, alleging:
1. Want of jurisdiction in this court. The defendants' counsel argue, with great ability, that relief should be sought in the court rendering the decree; that this court has no jurisdiction to interfere with, set aside or annul the decree of the court of common pleas, that court pertaining to another sovereignty. As I understand the rule, it is this: that in all eases where, in a direct proceeding, there are parties before a court other than that in which a decree has been *297 rendered, and it is charged that the decree was fraudulent, the court can entertain jurisdiction, and, if the fraud is proved, can prevent all parties who are before it from enforcing the decree, and, of course, from obtaining any advantage by virtue of a sale made thereunder. The court acts upon the decree and sale through the parties who are before it, not directly upon the decree of the other court, but adjudges that, notwithstanding the decree, the parties who obtained it, and those before the court who claim property by virtue of a sale under it, with knowledge of the fraud, shall not appropriate to their use the property thus acquired.
It is true, relief may sometimes be had by motion in the same court, or by a bill in the nature of a bill in review, but such relief is not always adequate, and an original bill is a proper mode of seeking redress against a decree obtained by fraud or covin.
The rule is clearly and concisely stated by Justice Bradley in Barrow v. Hunton, 9 Otto, 82. In speaking of the distinction between the two classes when an original suit may be entertained, and when the application for relief should be made to the court granting the judgment or decree, he says: “If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review, or an appeal, it would belong to the latter category, and the United States court could not entertain jurisdiction of the case. * * * * * On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, * * * * and the case might be within the cognizance of the federal courts. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; in the other, the investigation of a new case, arising upon new facts, though having relation to the validity of an existing judgment or decree, or to the right of the party to claim any benefit by reason thereof.”
I think the jurisdiction of the court to entertain this suit *298 not doubtful, and the bill must stand, unless there is no equity stated therein, and this brings me to the consideration of the other ground of demurrer.
2. The defendants demur for want of equity in the bill. The bill alleges, in substance, that the trustees, in the deed to secure the $3,000,000 issue of bonds, in May, 1874, at the instance of John S. Kennedy, one of the"defendants in this suit, and the agent of a committee of Amsterdam bond holders, having in their hands and under their control a majority of the bonds of this series, commenced a suit against the First Division of the St. Paul & Pacific Railroad Company and others to foreclose the trust deed, and that after the commencement of the suit Kennedy, the agent, entered into an agreement with the defendant company for the suspension of the prosecution of the suit, and the trustees who instituted it, at his instance, suspended the prosecution of the same for several years, and until requested by him to proceed; that sometime in 1878 one of the trustees resigned, and Kennedy was appointed as trustee and co-complainant in said foreclosure suit, and thereafter acted in the capacity of trustee in said trust deed and foreclosure suit, and as the special agent of the committee, and of the bond holders who had placed, their bonds in’ the hands of the committee for control and manage ment; that on the ninth of October, 1876, the trustees, including Kennedy, under the authority conferred in the deed of trust, took possession of the railroad appurtenances and property covered by the trust deed, and operated the road, and that in 1876 or 1877 Donald A. Smith, George Stephen, N. W. Kittson, James J. Hill and others formed a syndicate for the purpose of acquiring the line of railroad, etc., covered by the mortgage, under the foreclosure proceedings and a sale, and made a proposition, through Kennedy, to the committee of Amsterdam bond holders for the purchase and control of the bonds in their hands, and that Kennedy, the agent of a committee of bond holders, and trustee for all the bond holders, entered into an agreement with Smith, Stephen, Kittson and Hill for the purchase and control of the bonds held by the committee, and into negotiations which contemplated the *299 acquisition of the line of railroad of the First Division of the St. Paul & Pacific Railroad Company, etc., by purchase at the foreclosure sale to he made in said pending foreclosure suit, and payment therefor in bonds; that the suit should proceed under the advice and instruction of said parties, Smith and others; that the negotiation for the sale of the bonds was consummated with Kennedy, who approved the proposal and recommended its acceptance, and that the suit was prosecuted, conducted and concluded under the advice and instruction of Smith, Stephen, Kittson and Hill, through Kennedy as agent, and with a view to obtain a transfer of said road to them under the forms of judicial proceedings in fraud of the rights of bond holders who had not contracted to sell their bonds to said parties; that Kennedy, as agent, paid and controlled the counsel in the foreclosure suit; and, further, in substance, that the result of the suit and the decree, by consent, was in the interest of the parties who had so negotiated with Kennedy, they having become domini litis in respect to the foreclosure proceedings. It is also charged that the trustees, through Kennedy, fraudulently connived and combined with the syndicate to allow the property and railroad to be purchased at the foreclosure by the St. Paul, Minneapolis & Manitoba Railroad Company at a nominal price, compared with its true value.
“Peoposal Made at New Yobk Meeting op Januaby 3, 1878, by Canada Paety.
“[tbanslation.]
“The proposal embraces all certificates which have been issued by the committee, and must be accepted by at least the same proportion of certificates which acceded to the former proposal. It is offered to pay for first section bonds ($1,200,-000) net 75 percent, in gold; consolidated bonds ($2,800,000) net 28 per cent, in gold; second section bonds ($3,000,000) net 30 per cent, in gold; 1869 bonds ($6,000,000) net 35 per cent, in gold; St. Vincent & Brainerd bonds ($15,000,000) net 13f per cent, in gold, of the nominal amount of the bonds, *300 including the past-due coupons, which pass with the bonds for this price.
“Upon acceptance of this proposal these bonds shall be deposited in the Mercantile Safe Deposit Company of New York, in the name of trustees, for which the committee proposes the Messrs. J. S. Kennedy and John S. Barnes, chiefs of the firm of J. S. Kennedy & Co. These bonds shall be delivered to the purchasers by the trustees, as agents of the committee, against the payment of the purchase price in the manner hereinafter named.
“The aforesaid purchase price must be paid within six months after the date, which, by virtue of the last foreclosure decree of each court has been declared as the day of sale of the bonds, as described in the trust deeds by which the above-named issues of bonds have been respectively secured. The aforenamed purchase price for said bonds shall bear interest from the twenty-second of December, 1877, at 7 per cent, per annum, payable half yearly in gold, in the city of New York. The principal of the above-named purchase price shall be paid — First, either in gold; second, or in first mortgage gold bonds of the newly to be created company, bearing 7 per cent, interest, payable half yearly in gold at par; but the purchasers shall also add to every bond of $1,000 the amount of $250, in first preferred, stock of the new company; third, or, at the option of the certificate holders, or any of them separately, the same first mortgage gold bonds as described under No. 2, calculated at 90 per cent., but in that case without addition of the preferred stock.
“It is further expressly agreed that on the reorganized road no further first mortgage shall be issued than the above-named, so that the rate of $12,000 per mile oh the completed road shall not be increased.
“As soon as ‘bonds' shall be offered in payment the form and contents of the trust deeds must be subjected to the approval of the agents of the committee. The trust deeds must comprise all property of any and every kind belonging to the new company at the time that the mortgage is created, in- *301 eluding the land grant, and these bonds shall be received at par in payment for the lands of the company.
“The total amount of the above-named preferred stock shall be limited to 25 per cent, of the whole issue of bonds of the first mortgage, and the dividend on this preferred stock not to exceed 6 per cent, per annum in currency shall be paid, but only after the receipts of the new company, after payment of all necessary expenses and the interest on the bonds, shall have been provided for.
“The option of payment named under No. 1 and No. 2 is left, primarily, to the purchasers, but should they choose to pay in money the seller shall have the right to demand bonds, as described — sub. 2 and 3 — either at par with preferred stock or at 90 per cent, without preferred stock.
“The purchasers further bind themselves:
“a. As soon as they have received the notice that their offer is accepted, and the bonds have been delivered to the above-named trust company, to restitute the costs caused by them to the committee, as well as the amount of the committee costs resting on the assenting certificates.
“b. To complete the extension to St. Yincent as speedily as possible; if possible within this year, and agree to furnish ■sufficient security for the execution hereof, which will be acceptable to the agents of the committee, Messrs. J. S. Kennedy & Co.
“e. To restitute the cost of the construction of the Breckenridge-Barnes line in cash, at the same time with the payment for the bonds, and in the meanwhile to pay interest at 7 per cent, per annum, half yearly.
“d. The now pending foreclosure suits, and other suits, shall be continued by the committee and its agents, under advice and instruction of the purchasers, free of all costs for the holders of the assenting certificates.”
It is unnecessary to recapitulate all the allegations in the bill which are conceded to be true by the demurrer, nor is it necessary to determine whether all the relief prayed for can be granted. The charges are sufficient to require an answer, for they tend to show that Kennedy combined with Smith, *302 Stephen, Kittson and Hill to aid them in acquiring the property mortgaged at a sacrifice of the interests of bondholders not parties to the contract, to secure the road, etc., and that the former permitted the control of the litigation to pass to Smith and his associates, consenting that they might assume the functions of trustees; the co-trustees of Kennedy in the trust deed having accorded to him the right to determine and control the action of the trustees in all matters appertaining to the trust property and the execution of the trust.
While there is no doubt that creditors may combine to purchase the property of their debtor, and such action is proper and will be sustained, yet if a trustee, holding the property for the benefit of all the creditors, combine with a. part to aid them in purchasing it to the exclusion of the other creditors, and the trustee also has in his possession, as agent, the evidences of debt belonging to the creditors with whom he has combined, and the property, by the act of the trustee, passes into the possession of those creditors at a price much less than its value, it can hardly be claimed that a purchase thus consummated is not inequitable. Such is one of the charges in the bill, and it requires an answer so that the-court may determine upon the proofs, at the final hearing, whether it is true or not.
The demurrer is overruled, with leave to answer at the July rule day.