(No. 22348.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
FRED E. STERLING *et al.* Appellees.

*Opinion filed June 19, 1934—Rehearing denied October 5, 1934.*

OTTO KERNER, Attorney General, (CHARLES W. HADLEY, and GEORGE H. KRIETE, of counsel,) for appellant.

PATRICK J. LUCEY, WELSH & WELSH, WERNER W. SCHROEDER, and JOHN H. BECKERS, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The People of the State of Illinois, by the Attorney General, filed a bill in equity in the circuit court of Cook county against Fred E. Sterling, Len Small, Verne S. Curtis and others therein named, as defendants, seeking an accounting for interest on State funds alleged to be due from Sterling, a former State Treasurer, and for other relief hereinafter mentioned. The defendants filed special limited appearances for the purpose only of questioning the jurisdiction of the court, accompanied by a motion to dismiss for want of jurisdiction. This motion was allowed, and upon decree dismissing the bill for want of jurisdiction the cause is brought to this court by direct appeal, the State being a party.

The bill of complaint herein alleges the places of residence of the various defendants, none of them being in Sangamon county. It sets out that in November, 1921,

the People, by Edward J. Brundage, who was then Attor-
ney General of the State, filed a certain bill of complaint
in the circuit court of Sangamon county against the iden-
tical defendants herein named and sets forth *in hæc verba*
the allegations and prayer of that bill. That bill alleged, in
substance, that the defendant Fred E. Sterling was Treas-
rer of Illinois for two years from and after the second
Monday in January, 1919, and that the defendants Len
Small, Edward C. Curtis and others were his bondsmen,
and that he duly qualified and served as such State Treas-
urer, receiving a salary of $10,000 per annum therefor
and not entitled to any other profit or income from said
office. That bill further alleged that Small was the imme-
diate predecessor in office of Sterling, having served from
the first Monday in January, 1917, to the time Sterling
took office. It sets forth and describes an alleged con-
spiracy between Small, Sterling, Edward C. Curtis and
Verne S. Curtis whereby State funds were to be used for
the purpose of earning interest for the private profit and
advantage of the conspirators. The bill was, in substance,
identical with that in the case of *People* v. *Small,* 319 Ill.
437, to which reference is hereby made for a fuller de-
scription of the allegations contained.

The bill in this case, after setting forth in full the
bill in the previous case as above mentioned, proceeds to
allege the issuance and service of summons in the prior
suit, an order referring that case to a master in chancery,
an order of January 7, 1929, in the circuit court of Sanga-
mon county requiring the complainant to show cause why
the suit should not be stricken from the docket, an order
of February 2, 1929, discharging that rule, and a final
order of that court on November 19, 1932, which was in
the words following, omitting the heading and title, which
are not material here:

"This day comes Oscar E. Carlstrom, Attorney Gen-
eral of the State of Illinois, and enters his motion to dis-

miss this cause for want of equity. Also on this day comes Otto Kerner, Attorney General elect, and objects and protests to the dismissal of this cause. And the court having heard the motion to dismiss for want of equity, and being now fully advised, allows the said motion. And it is thereupon ordered by the court that this cause be and the same is hereby dismissed for want of equity, on motion of the Attorney General."

After recital of these proceedings and decree in the former suit in Sangamon county, the bill proceeds to allege that the allegations in the prior bill were true; that Oscar E. Carlstrom, who caused the entry of the order dismissing the former suit without equity, was the same Oscar E. Carlstrom who was elected Attorney General at the November, 1924, election, at which Sterling was elected Lieutenant-Governor and Small elected Governor of Illinois, and that he had made political promises to the effect that he would dismiss the above mentioned interest suit and others then pending against Small and other State treasurers, if elected. The bill then alleges and sets forth in full a decree of the circuit court of Sangamon county entered on December 31, 1924, finding, in substance, that Small, Sterling, Curtis and others had conspired to secure a private profit from the use of State funds and by the means therein set forth, which are also fully described in *People* v. *Small, supra,* to which reference is made. The opinion of this court in the *Small case* is set forth in full, and the bill then proceeds to allege the re-docketing of that case, the reference to the master for an accounting, that it was made to appear before the master that the situations under Small and Sterling were identical, and that Carlstrom had knowledge of all of these facts and that the dealings were a mere cloak or device to divert from the People of the State of Illinois interest and discount derived from the use of the people's funds; that Carlstrom participated, as Attorney General, in these proceedings, to-

gether with three of his assistants, and had available at all times full information and knowledge of the sums, alleged to be as large as a million dollars, claimed to have accrued during the Sterling administration and to have been wrongfully diverted to Sterling, Small and Curtis. It then alleges the existence of a fiduciary relation between Carlstrom and the People of the State of Illinois, and his duty to make full and complete inquiry concerning the rights of the people to the funds involved in the proceedings against Sterling and others and to not make any disposition of said suit without fully informing himself in connection therewith. It is alleged that he failed to make such inquiries and that he disregarded such facts as were known to him, and fraudulently failed to protect the people in their rights in the suits against Sterling and others, in total disregard of his duty and in fraud of the People of the State of Illinois. The bill alleges that the present Attorney General, Otto Kerner, prior to his induction into office but after his election, appeared in court and protested against the dismissal of the above mentioned suit and the entry of the decree for want of equity, but that his protests were disregarded by Carlstrom and by the court. Other facts are alleged and the conclusion asserted that the order of the circuit court of Sangamon county entered on the 19th of November, 1932, dismissing the bill against Sterling for want of equity, was obtained by fraud and should be set aside, and that a full account should be taken and found by the court upon a full hearing as to the amount due to the people by reason of the wrongful diversion of interest and discount as set forth in the present and prior bills.

The prayer of the bill is that the defendants, and each of them, be required to answer but not under oath, the answer under oath being waived; that the order and decree of the circuit court of Sangamon county entered on the 19th day of November, 1932, in the cause of The People, etc. *vs.* Fred E. Sterling *et al.* dismissing said cause for

want of equity, be held "fraudulent and void, vacated and set aside in so far as same may be claimed by defendants to be *res adjudicata* or an estoppel or bar to the relief in this bill of complaint prayed;" that Fred E. Sterling, Verne S. Curtis, Etha G. Curtis, administratrix of the estate of Edward C. Curtis, deceased, may be required to account, etc., and with a prayer for further relief against the various bondsmen. The bill is signed by the People of the State of Illinois, by Otto Kerner, Attorney General.

The defendants came into court, and, after filing limited appearances for the purpose of questioning the jurisdiction, filed their motions to dismiss for want of jurisdiction.

Briefly summarized, the appellant contends that the bill in this case is neither a bill of review nor a bill in the nature of a bill of review; that it is merely a bill for an accounting, and that it does not seek to modify or set aside the decree of the circuit court of Sangamon county but merely prays that the defendants, who are alleged to be parties to the fraud, be prevented from obtaining any benefits thereunder, on the ground that fraud vitiates all things. The appellees contend, and the circuit court apparently held, that this is·a bill in the nature of a bill of review and that it cannot be brought in any other county or any other court than that which entered the decree sought to be reviewed. This is the only issue before us.

A motion to dismiss a bill upon the ground that there is no equity apparent upon the face of the bill or that the court has no jurisdiction is treated as a general demurrer, admitting all the facts well pleaded. (*Vieley* v. *Thompson,* 44 Ill. 9; *Hickey* v. *Stone,* 60 id. 458; *Emerson* v. *Western Union Railroad Co.* 75 id. 176; *Grimes* v. *Grimes,* 143 id. 550.) We are therefore to determine whether or not the circuit court of Cook county had jurisdiction, assuming all things well pleaded in the bill to be true.

In this bill, as compared with the original bill in Sangamon county, there is an identity of parties, of cause

of action, of subject matter and of relief prayed. We must therefore at the beginning of our inquiry determine whether or not it is true, as appellant contends, that fraud vitiates every transaction into which it enters, even to the extent of so far invalidating a decree of a court of competent jurisdiction that it can be held for naught by another court of equal, but no greater, jurisdiction when later called in question between the same parties, concerning the same subject matters and praying for the same relief. If such is the rule it must necessarily follow that the second litigation would be no more conclusive than the first had been, nor, for that matter, would the third or fourth, or any other number. The unqualified adoption of such a rule would be so disruptive of the orderly processes of our courts and so fatal to the well known principle that it is desirable that litigation should have an end, that we have examined the subject with some care. We find upon our examination that the rule is not as contended for by the People but quite the contrary.

It is true that there is much language in the reported cases which would support appellant's contention if considered only by itself and not in connection with the facts in the cases and other language in the same opinion. Thus, in *Wing* v. *Little*, 267 Ill. 20, this court said on page 27: "The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions." Further on in the opinion, however, is the following language: "A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights or interests of third persons, and fraud is not a thing that can stand even when robed in a judgment." In that case Little was not a party to the collusive judgment, which had been obtained by Wing against a man by the name of Adams through fraud and collusion for the purpose of trying to fix a burden upon real estate owned by Little. The plainest principles of equity required, as

this court held, that Little should have the right in an independent action to attack that judgment when it sought to deprive him of his property. It is not in point on this inquiry. Also in *Nelson* v. *Rockwell,* 14 Ill. 375, this court said: "Fraud is one of the broadest grounds of equity recognized by the courts, and relief may be obtained against a judgment at law although the party might find a remedy in the court of law." Further on, however, we said: "But the judgment is not impeached alone for the fraud alleged. It is shown to be void for the want of jurisdiction in the justice to render the judgment."

Appellant in this case also cites cases from other jurisdictions. Thus, in *Sahlgard* v. *Kennedy,* 2 Fed. 295, the court said: "And if the fraud is proved, can prevent all parties who are before it from enforcing the decree, and, of course, from obtaining any advantage by virtue of a sale made therein." An examination of the case discloses that it is similar to *Wing* v. *Little, supra,* wherein it was attempted by a fraudulent decree to affect the rights of a third person. The case of *Dobson* v. *Pearce,* 12 N. Y. 156, is cited on account of the following language in the opinion on page 164: "So fraud and imposition invalidate a judgment as they do all acts; and it is not without semblance of authority that it has been suggested that at law the fraud may be alleged whenever the party seeks to avail himself of the results of his own fraudulent conduct by setting up the judgment, the fruits of his fraud." Further on in the opinion, however, it appears that the only holding of the court upon that branch of the case was to the effect that under the code practice of New York, fraud in the recovery of a judgment could be alleged against it collaterally at law, the distinction between law and equity having been abolished. The court, however, went on to hold the Connecticut judgment therein questioned to be final and binding, in the following words appearing on page 167: "In the State of Connecticut it

is quite clear the question of fraud would not be an open question between the parties but would be considered entirely settled by a decree of the court of that State, and as full faith and credit are to be given in each State to the judicial proceedings of every other State—that is, the same credit, validity and effect as they would have in the State in which they were had—the parties are concluded in the courts of this State by the judgment of the court in Connecticut directly upon the question in issue."

Upon the other hand, we find the rule to be firmly established in American jurisprudence that a judgment of a court of competent jurisdiction, having jurisdiction of the subject and the parties by legal process duly served, where no appeal, writ of error, *certiorari*, review or other legal process lies for revising, reversing or affirming such judgment, or where no such process is commenced by the party who would void the judgment in the mode and at the time prescribed by law, is conclusive upon the same parties in any other proceeding in law, in equity, or before any other judicial tribunal. (*Greene* v. *Greene, 2* Gray, 361.) In the case just cited the wife sought a divorce from her husband, alleging five years' desertion. She set forth the existence of a decree *a vinculo* obtained by her husband at a former term and averred that the decree was obtained by fraud and false testimony. She requested that the court hear evidence as to the fraud, collusion and false testimony by which the decree was obtained against her and that the same might be set aside and held for naught. In the course of the opinion the court said: "But if a new and original libel may be brought upon the ground that a former decree was obtained by false evidence, we see nothing to prevent the husband from bringing a third suit to reverse the decree of reversal on a suggestion and offer of proof that the decree of reversal was obtained on perjury, subornation of perjury and other fraud, and thus reverse the second decree and re-instate the original

decree of divorce *a vinculo.*" The court then proceeds to lay down the rule as stated at the beginning of this paragraph. That case is cited because of its age and because it has been so frequently cited and followed in this country.

As it would unnecessarily prolong this opinion to review the numerous authorities in various States we will confine ourselves to those in Illinois. In the early case of *Swiggart* v. *Harber*, 4 Scam. 364, this court laid down the rule that where a court has jurisdiction of the person of the defendant and the subject matter of the suit, its judgment, until reversed, is binding upon the parties whether correct or not, and that it is only where there is a want of jurisdiction in the court that the proceedings are a nullity. The same rule was again announced in *Buckmaster* v. *Ryder*, 12 Ill. 207, where the court said: "The decree was undoubtedly erroneous as to Ryder & Frost and in a direct proceeding for the purpose might have been reversed, but it by no means follows that it can be declared invalid in this collateral proceeding." In *Spring* v. *Kane*, 86 Ill. 580, this court said: "No principle is better settled in our jurisprudence than that where a court has jurisdiction of the subject matter and of the persons of the parties to the litigation, its judgments or decrees, when called in question collaterally, will be held valid." To the same effect is *Marsh* v. *Irwin*, 168 Ill. 50, and *Miller* v. *Rowan*, 251 id. 344. In the case last cited the late Mr. Justice Cartwright said: "If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding upon the parties and on every other court unless reversed or annulled in a direct proceeding, and is not open to collateral attack." In *Wyman* v. *Hageman*, 318 Ill. 64, we said: "Where the court has jurisdiction of the parties and of the subject

matter in controversy and enters a final order or decree, and that order or decree is not appealed from,. it cannot thereafter be collaterally attacked." And in the recent case of *Woodward* v. *Ruel*, 355 Ill. 163, we used the following language: "The judgment of a court which has jurisdiction of the subject matter and of the parties and possesses the power to render the particular judgment, even though erroneous, is immune from collateral attack."

Notwithstanding these authorities and this well established principle, the appellant contends that because the decree in the Sangamon county circuit court was procured by fraud it must be treated as a nullity. In considering this point it must be borne in mind that there are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect. One of the earlier cases in this State on the point is *Caswell* v. *Caswell*, 120 Ill. 377, which cites the case of *Greene* v. *Greene*, 2 Gray, 361, hereinabove quoted from, and also the case of *Edson* v. *Edson*, 108 Mass. 590. The rule is laid down as herein stated. In the case of *Burton* v. *Perry*, 146 Ill. 71, the following statement is found: "Counsel for appellees charge that the proceeding of 1869 was a fraud perpetrated upon the courts by Cook and that no such contract of sale as is therein set up ever existed. * * * But if it were true that Cook was guilty of the fraud charged against him, it was not such a fraud as goes to the jurisdiction of the court rendering the decree of 1870 and therefore is unavailable in a collateral attack up-. on the proceedings of 1869." In *Evans* v. *Woodsworth*,

213 Ill. 404, we said: "Courts of equity will not, however, set aside a decree upon the ground that it was obtained by false evidence but only for fraud which gives a court colorable jurisdiction over the defense presented." In *Beck* v. *Lash,* 303 Ill. 549, this court said: "There are two kinds of fraud as applied to judicial proceedings: Fraud in obtaining an order or decree by false testimony, and fraud which gives the court only colorable jurisdiction. It is only the latter that renders collateral attacks effective or renders a decree void as to all parties affected." The same rule is again stated in *Foutch* v. *Zempel,* 332 Ill. 192.

It being entirely clear that the decree of the circuit court of Sangamon county is not subject to collateral attack, it becomes necessary to determine, first, whether this bill, regardless of what it may be called, is a direct attack— *i. e.,* a bill of review or a bill in the nature of a bill of review; and second, if the bill in this case is a bill of review or a bill in the nature of a bill of review, whether any court other than the circuit court of Sangamon county has jurisdiction to entertain it.

It is not essential to this decision that we attempt any refined discussion as to the difference between bills of review and bills in the nature of bills of review. These terms have been loosely used to describe in general that form of equitable procedure whereby a bill is filed to procure the explanation, alteration or reversal of a final decree by the court which rendered it, after its enrollment or the equivalent thereof. The fundamental rule on this subject was first laid down by Lord Bacon, (4 Bacon's Works, (ed. 1824,) p. 509,) and the law on this point has always been clearly defined and well understood in Illinois. In *Griggs* v. *Gear,* 3 Gilm. 2, decided in this court at the December term, 1845, it was held that bills of review and bills in the nature of bills of review are divided into three classes: First, one brought for error of law apparent upon the face of the decree; second, a bill of review for newly

discovered evidence; and third, a bill for opening and re-
versing a decree in the same court for fraud. This defini-
tion of the attributes of a bill of review or a bill in the
nature of a bill of review has been re-stated in this court
and re-affirmed in the later cases of *Harrigan* v. *County of
Peoria,* 262 Ill. 36, and *Moore* v. *Shook,* 276 id. 47.

It is insisted by the appellant, however, that the bill
in this case is not a bill of review nor a bill in the nature
of a bill of review but a new and independent suit. It is
sufficient to point out in this connection that bills in the
nature of bills of review based upon fraud or newly dis-
covered evidence always partake more or less of the nature
of independent bills. In the case of *Knobloch* v. *Mueller,*
123 Ill. 554, this court said: "Bills containing newly dis-
covered matter are in the nature of original bills in so far
as such new matter presents an issuable fact and therefore
admitting an answer and formation of an issue, but only
so far as it relates to the truth and sufficiency of the alleged
new matter and its admissibility for the purpose of affect-
ing and opening the original decree. (Authorities *supra;
Buffington* v. *Harvey,* 95 U. S. 99.) The purpose of the
bill of the character named is to procure a reversal, altera-
tion or explanation of the former decree. The bill should
State the former bill, the proceedings thereon and the de-
cree rendered by the court, the grievance under the decree
of the party presenting the bill, and the error of law or
new matter discovered upon which it is sought to reverse,
re-open or impeach it. In bills of review, if the former
decree has not been carried into execution, the prayer may
simply be that the same may be reversed and set aside;
if the former decree has been executed, that the decree be
reversed and the complainant be restored to his former
condition or status as if it had not been rendered. In bills
in the nature of bills of review, instead of praying the re-
versal of the former decree, the prayer should be that the
cause be re-heard in respect to and considering the new

matter at the same time it is re-heard upon the original bill, etc.—Daniell's Ch. Pr. 1581, 1582."

The above authorities clearly indicate that no matter by what name it may be called, the bill in this case is in legal effect a bill in the nature of a bill of review. The relief sought cannot be had so long as the prior decree remains in full force, and it has been said to be one of the tests for determining whether a bill is a bill of review, to determine whether the former decree might be pleaded in bar of the later suit. *Knight* v. *Atkisson,* 2 Tenn. Ch. 384.

This leaves for our consideration only the final question of whether a bill in the nature of a bill of review may be brought in any court other than the one in which the original decree was entered. It is clearly established in this State that it cannot. In the case of *Mathias* v. *Mathias,* 202 Ill. 125, the parties were husband and wife. The husband filed his bill for divorce in the circuit court of Cook county charging the wife with desertion. Service was obtained by publication and a decree entered in his favor. Thereafter, and within the time allowed by statute, the wife appeared, filed her petition, and was permitted to answer the bill for divorce and to be heard touching the matter of the decree pursuant to the statute. She was also permitted to file a cross-bill for separate maintenance, and upon a final hearing of the issues the court found in favor of the wife, dismissing the husband's bill for divorce and granting the wife separate maintenance. Thereafter the husband filed a bill of review in the superior court of Cook county seeking a review of the decree of the circuit court above mentioned. The wife, by motion and demurrer, objected to the jurisdiction of the superior court but was overruled and a decree entered in that court. Upon appeal that decree was reversed in the Appellate Court and the judgment of that court later affirmed in this court. In discussing the point involved in this case, and after holding that the circuit and superior courts of Cook county

were separate and distinct courts, we used the following language: "Neither court has power or authority over the clerk, the seal or the records of the other. Neither has advisory power over proceedings had in the other, and the judgments and decrees entered in either of such courts cannot be altered or reversed by the other of said courts. Each judge of either of said courts may entertain a bill to review a decree entered by any other judge in the same court, but no judge in either court has power to revise or review a judgment or decree entered by the court of which he is not a member or by any other circuit court in the State. A bill to review a decree in chancery can only be filed in the court wherein the decree sought to be reviewed was pronounced. (*Allerton* v. *Hopkins*, 160 Ill. 448; 3 Ency. of Pl. & Pr. 573; 2 Beach on Modern Law of Equity, 863; *Hancock* v. *Hutcherson*, 76 Va. 609.) One court cannot review the decree of another court even though both courts have concurrent original jurisdiction. A bill of review must be filed in the court where the record of the decree remains and where the decree was pronounced." The general rule as thus adopted in Illinois is stated to be the law in Corpus Juris, where, in volume 21, page 726, it is laid down without exception and supported by citations from fourteen States and the Federal courts. No authority to the contrary is mentioned.

What we have said disposes of all but two of the contentions raised by appellant. It is urged that "equity will not suffer a wrong to be without a remedy." Without questioning the soundness of this maxim, we can only suggest that no authority is cited to us, and we know of no case, wherein that maxim has been extended to confer jurisdiction upon a court which has none. There is also a suggestion of doubt, rather than an argument, as to whether the former Attorney General could dismiss the proceeding then pending in Sangamon county because of his not having done so in good faith. The holding of this court in

*Fergus* v. *Russel,* 270 Ill. 304, and the language of the opinion in that case, are a sufficient answer on this point.

In this opinion we have not reviewed. every authority cited by the parties. There are about one hundred and twenty-five citations in the briefs, and we have endeavored to discuss such of them as we consider necessary to a determination of the principles governing this case. Upon a full consideration we are of the opinion that the bill in this case is in legal effect a bill in the nature of a bill of review and that the circuit court of Cook county was without jurisdiction to entertain it.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*