ROBERT BOWMAN PECK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100604. Promulgated November 18, 1941.

*Louis E. Hart, Esq.*, and *John R. Montgomery, Jr., Esq.*, for the petitioner.

*John D. Kiley, Esq.*, for the respondent.

OPINION.

ARNOLD: In support of his determination that the income of the trust is taxable to petitioner respondent cites *Douglas* v. *Willcuts*, 296 U. S. 1, and *Helvering* v. *Fitch*, 309 U. S. 149. He contends that the trust income paid to Florence Reid Peck discharged petitioner's con-

tinuing legal obligation to support her; that no full and complete discharge from said obligation resulted from the French decree of divorce; that said decree was rendered under circumstances amounting to fraud, because petitioner supplied the court with an erroneous address for his former wife and the court was without jurisdiction to render a valid decree.

Petitioner distinguishes *Douglas* v. *Willcuts, supra,* and *Helvering* v. *Fitch, supra,* and asserts that the rule applicable here is set forth in *Helvering* v. *Fuller,* 310 U. S. 69, and *William H. Stanley,* 41 B. T. A. 1233. He contends that a permanent property settlement was effected with Florence Reid Peck; that the trust was created at her request and was not created for the purpose of discharging his marital obligations; that the French court properly acquired jurisdiction of the parties under French law, found the wife at fault, and gave petitioner a divorce; that the party at fault under French law is not entitled to alimony and no alimony was decreed. Petitioner further contends that the French decree is not subject to collateral or direct attack either in France or Illinois under the circumstances existing in this proceeding.

In the *Fitch* case, *supra,* the Supreme Court laid down the rule that a taxpayer must show by clear and convincing proof that local law and the trust indenture have given him a full and complete discharge of all obligation to support his divorced wife, if he is to be relieved of the burden of the tax. The difference between the *Fuller* and the *Fitch* cases, *supra,* is that the proof was clear and convincing in the former but not in the latter. Likewise in *Helvering* v. *Leonard,* 310 U. S. 80, the proof was not clear and convincing that the grantor of the trust had secured an absolute discharge from his prior obligations by the divorce decree and the trust instrument. The operation of the rule is illustrated by our decision in *F. W. Fitch,* 43 B. T. A. 773, wherein we considered the taxpayer's proof for years subsequent to the taxable year considered by the Supreme Court. We found the proof as to the later years to be clear and convincing and we held that the local law and the trust indenture had given the taxpayer a full and complete discharge.

Here, we have found as a fact that the property instead of being transferred directly to the wife was at her request transferred to a trustee. Had the property been transferred to the wife, as contemplated, there is no doubt but that she, and not the petitioner, would be taxable on the income. These circumstances indicate that the property settlement was intended by the spouses to be a full and complete discharge of the petitioner's marital obligation.

Any question as to petitioner's legal duty to support his children would seem to be resolved by their respective ages during the taxable years. In our opinion any legal obligation to support them termi-

nated prior to the taxable years when the children reached their majority. *Stephen J. Leonard*, 36 B. T. A. 563; affirmed on other grounds, 310 U. S. 80.

We shall consider next respondent's contention that the French divorce decree is invalid. An examination of the applicable sections of the French Code in the light of the testimony of a French practitioner, versed in the French law, who testified at length regarding the laws of France relating to methods of obtaining jurisdiction and the finality of a French decree of divorce, convinces us that the decree is valid. The testimony is that even if an erroneous address for Florence Reid Peck had been *intentionally* given by petitioner, the divorce would be voidable and not void, and the defendant would have had to take affirmative action to set aside the decree. No such action was ever taken by Florence Reid Peck, although she consulted her attorney after hearing of petitioner's remarriage. Thereafter, she was in Europe at least three times prior to the taxable years and made no effort to question the decree. The time within which Florence Reid Peck could have taken affirmative action after knowledge of the divorce expired long prior to the taxable years.

Furthermore, the decree shows on its face that petitioner furnished his former wife's place of address at the time he left this country for France. Florence Reid Peck testified that she did not know where petitioner resided during the years 1920 to 1925, inclusive, and there is no reason to suppose from this record that petitioner was any better informed as to where she resided. Lacking knowledge of any change of address, petitioner gave Florence Reid Peck's last known place of address. No intention to deceive the court can be inferred from such action.

The testimony further shows that under French law the service of papers incident to a divorce proceeding on a nonresident party is made by the public prosecutor through regular diplomatic channels. The decree recites that Florence Reid Peck was regularly notified and the signatures of various French officials are duly authenticated. We can find no basis under these circumstances for imputing fraud to the petitioner.

Respondent concedes that petitioner had his "domicile" in France at the time of the divorce. The testimony shows that under French law the "domicile" of the wife follows the husband. That being true, the jurisdiction of the French court over the spouses would seem to be unquestionable where the prescribed procedure was followed in the service of papers on the absentee spouse. We are of the opinion, therefore, that the French decree of divorce was valid, and, unless it is subject to collateral or direct attack in Illinois, effect must be given thereto. And certainly, if effect is given to the pro-

visions of the French Civil Code, set forth in our findings, the divorced wife has lost the right to all the benefits of the marriage contract and petitioner's legal obligation to support had terminated prior to the taxable years. The testimony shows that in the absence of fraud any direct attack in the French courts would be prohibited upon the decree becoming final, which occurred long prior to the taxable years.

The Illinois courts follow the rule announced by the Supreme Court of the United States in *Thompson* v. *Whitman*, 18 Wall. 457, that recitals as to jurisdiction in the judgment record of a foreign judgment are not conclusive, but may be controverted by extraneous evidence. *Baker* v. *Brown*, 298 Ill. App. 173; 18 N. E. (2d) 578, and cases therein cited. But where the court acquired jurisdiction and entered a final order or decree, from which no appeal was taken, the decree can not be collaterally attacked. *People* v. *Sterling*, 357 Ill. 354; 192 N. E. 229, 233; *Wyman* v. *Hageman*, 318 Ill. 64; 148 N. E. 852, 855. Even though the judgment is erroneous, it has been held immune from collateral attack. *Woodward* v. *Ruel*, 355 Ill. 163; 188 N. E. 911, 914. And in *Drummond* v. *Lynch*, 82 Fed. (2d) 806, the Circuit Court of Appeals held that the inquiry must be confined to jurisdictional infirmities, and the judgment can not be impeached for mere irregularities.

While the cited authorities dealt with foreign judgments as between the states, or as between a state court and a Federal court, the rule is in our opinion equally applicable to the decree of a French court. Here, as we have pointed out, the French court acquired jurisdiction. The alleged fraud on the court has not been established and the French decree was valid. Under such circumstances we believe the French decree would be recognized by the Illinois courts as terminating petitioner's obligation to support his divorced wife. This is particularly true in view of the fact that Florence Reid Peck has made no effort to set the decree aside, has accepted the benefits of the decree, and has bought and sold property in her own right without recognizing any interest therein of the petitioner. Thus, whether the "local law" be considered the law of France or the law of Illinois, we are of the opinion that petitioner has established that by the terms of the trust and the decree of divorce he has a full and complete discharge from his legal obligation to support.

No point is made by either party that the trust indenture reserved the right to alter, change, amend, set aside, or revoke the trust with the consent in writing of the petitioner and Florence Reid Peck. Apparently, it was considered that the adverse interest of Florence Reid Peck was substantial enough to take the case outside the provisions of sections 166 and 167 of the Revenue Acts of 1934 and 1936. We direct attention thereto not for the purpose of raising the question, but to point out that it was not presented by the parties nor

decided by us. The same situation exists with respect to the possibility of a reversion to petitioner; apparently the possibility was considered too remote under the decided cases to raise the question.

One other paragraph of the trust indenture deserves comment. By the terms of the fifth paragraph of the trust agreement petitioner was promised by Florence Reid Peck that she would hold him free, clear, harmless, and indemnified from all her debts and obligations, and it was agreed that if he paid any such debts or obligations for her the trustee should reimburse petitioner from the trust income for the indebtedness so paid. We can not help but feel that this paragraph, plus the testimony of Florence Reid Peck that all property rights were settled between her and petitioner in 1920 and that the conveyance was made to a trustee for her benefit and at her request, establishes that petitioner had paid and satisfied his obligation to support Florence Reid Peck. Certainly as between themselves this was true and recognized by each. Every act of the spouses subsequent to January 12, 1920, is consistent with the theory that the trust income belonged to Florence Reid Peck and that petitioner had no interest therein, control thereof, or benefit therefrom.

In this view of the principal issue, respondent's affirmative allegation that capital gains and other trust income is taxable to petitioner must likewise fail. No income of the trust can be taxed to him where he retained no interest in the corpus or the income therefrom.

*Decision will be entered for the petitioner.*

