**In re Estate of Philip Goldberg, Deceased.
Goldie Goldberg, Appellant, v. Minnie Libby Goldberg, Appellee.**

**Gen. No. 9,126.**

Dove, J., dissenting.

Opinion filed January 18, 1937.

SHULMAN, SHULMAN & ABRAMS and RAYMOND FAIWELL, all of Chicago, for appellant.

EDWARD J. McARDLE, JR., of Chicago, for appellee.

HARRY C. KINNE, *pro se.*

MR. JUSTICE WOLFE delivered the opinion of the court.

This case is brought to this court on appeal from a decree of the circuit court of Lake county, in which the appellee, Minnie Libby Goldberg, was declared to be the legal widow and heir at law of Philip Goldberg, deceased.

For a great many years, Philip Goldberg lived in Highland Park in Lake county, Illinois. His first wife was Minnie Libby Goldberg. Minnie Libby Goldberg was adjudged to be insane on August 22, 1906. She was committed to the Elgin Hospital for the insane at that time, and has remained in this institution as an insane person up until the day of the trial of this case. Philip Goldberg, now deceased, filed his bill for divorce June 28, 1909, in the circuit court of Cook county, charging his wife with extreme and repeated cruelty. He alleged that the acts of cruelty were committed prior to the time that she became insane. In his bill, he alleged that he was a bona fide resident of Cook county, State of Illinois, for more than a year. The defendant, Minnie Libby Goldberg, was personally served with a summons to appear and defend the suit. On motion of the complainant's attorney, the trial court appointed Harry C. Kinne, an attorney at law, as guardian *ad litem* to represent Mrs. Goldberg in the divorce proceeding. An answer was filed by Mr. Kinne alleging that Mrs. Goldberg was an insane person, who was confined in the Elgin State Hospital for the insane. The answer denied each and every material allegation of the bill and called for strict proof of the same.

A hearing was had on the bill and answer before the court. Philip Goldberg testified that he had been an actual resident of the State of Illinois for 25 or more years, and for the past three years had been an actual resident of Cook county and that he lived at 238 West 14th street in Chicago, Illinois. He proved several instances of his wife's severe and repeated cruelty toward him, prior to the time that she was adjudged insane. On July 29, 1909, the court entered a decree finding that Philip Goldberg was an actual resident of the city of Chicago, and a resident of the State of Illinois, for more than one year prior to the filing of his bill for a divorce. The divorce was granted.

Shortly after Philip Goldberg obtained his decree of divorce from Minnie Libby Goldberg, he was married to Goldie F. Davidson, in the city of Kenosha, Wisconsin, and they lived together as husband and wife until the death of Philip Goldberg.

After the death of Philip Goldberg, letters of administration were taken out on his estate in probate court of Lake county. Minnie Libby Goldberg, through her attorney, asked the probate court of said county to declare that the divorce proceeding held in Cook county in 1909,—wherein Philip Goldberg was the complainant and Minnie Libby Goldberg the defendant,—be held null and void, because Philip Goldberg and his attorney had perpetrated a fraud upon the circuit court of Cook county in that, at the time of said divorce proceeding, the said Philip Goldberg was not a resident of Cook county, but was a bona fide resident of Lake county; and that said circuit court did not have jurisdiction in the case. A hearing was had before the probate court and the court found against Minnie Libby Goldberg. The case was appealed to the circuit court of said county and after a hearing before the court, the court found in favor of Minnie Libby Goldberg. An order was signed finding that at the time of said divorce proceedings, the said Philip Goldberg was not a resident of Cook county, but a resident of Lake county, and that said Philip Goldberg and Harry C. Kinne, the attorney and guardian *ad litem* for Minnie Libby Goldberg, in said divorce proceedings, had perpetrated a fraud upon the court and induced the court to take jurisdiction of the case and grant the divorce, and that the court was without jurisdiction to hear said case and said decree was null and void, and that Minnie Libby Goldberg is the lawful widow and an heir at law of Philip Goldberg, deceased. It was from this order that this appeal has been perfected.

Section 5 of chapter 40, Ill. State Bar Stats. 1935, ¶ 6; Jones Ill. Stats. Ann. 109.173 (Smith-Hurd Annotated Statutes) relative to the venue in a divorce proceeding is as follows: "The proceedings shall be had in the county where the plaintiff resides, but process may be directed to any county in the State." This section of the statute is mandatory in regard to where the complainant in a divorce proceeding must file his suit, and to give the court jurisdiction, the plaintiff must reside in the county in which he filed his suit. This court in the case of *Sommers v. Sommers,* 16 Ill. App. 77, so held, and to the same effect is the case *Way v. Way,* 64 Ill. 406. *Horix v. Horix,* 256 Ill. App. 436.

At the hearing before the circuit court, the appellee introduced numerous witnesses to testify to the place of residence of Philip Goldberg at the time he filed his divorce proceeding in the circuit court of Cook county. To review this evidence would serve no material purpose, but we have read the abstract and also the record of the testimony of the various witnesses who testified in the case, and it is our conclusion that the evidence clearly shows, and we so find, as a matter of fact, that at the time Philip Goldberg filed his suit for a divorce in Cook county, and at the time of the hearing of the same in said court, he was not a resident of Cook county, but was a bona fide resident of Lake county.

The question then arises in what court can the validity of this divorce proceeding be questioned. Is it necessary to file a bill of review, or some other appropriate action in Cook county to question the validity of this divorce, or can it be raised, as it is done, in this case by a collateral attack? It is insisted by the appellant that a divorce decree procured by fraud cannot be collaterally attacked and the recitals in the decree are conclusive in our courts. There are many cases that

hold that this is the correct rule, but there are exceptions to this rule and the main one is that where the fraud which gives the court, only colorable jurisdiction, renders the decree void and subject to collateral attack. From the evidence in this case, it is our opinion that Philip Goldberg perpetrated a fraud upon the circuit court of Cook county, and gave it only colorable jurisdiction to hear his case, and that the decree rendered by the said court was void and subject to collateral attack. Our courts have frequently held that a decree will not be set aside upon the ground that it was obtained by false evidence, but only for fraud that gives the court colorable jurisdiction. *Evans v. Woodsworth,* 213 Ill. 404; *Caswell v. Caswell,* 120 Ill. 377. The case of *Field v. Field,* 215 Ill. 496, is, in many respects, similar to the one now before us. The action was brought in the probate court in Cook county by the appellee, to have a widow's award allowed, as fixed by the appraisers of the estate of James H. Field. It appears that Frances C. Field was married to James H. Field; that James H. Field in December, 1878, filed a suit for a divorce in Boone county, Nebraska, in which he alleged he was a resident of Nebraska one year and was then a resident of Boone county in said State. He was granted a divorce on the hearing of his case. In April, 1879, he married Cloe M. Field and they lived together until his death, which occurred in 1894. The only question to be determined, was: who was the lawful widow of James H. Field at the time of his death? The court recites the facts as appearing from the evidence and found, that James H. Field was not a resident of the State of Nebraska, but was a resident of Cook county, at the time he filed his suit for a divorce. In discussing the case, the court used this language: ''Appellee denies that she ever had notice of the decree in the State of Nebraska until after the death of Field,

(and in this contention she is not contradicted,) but admits that she knew that James H. Field lived at the home of the appellant's mother in Chicago, from the time he deserted her, for several years, and was later living with the appellant for some years prior to and until the time of his death. If the courts in Nebraska did not have jurisdiction of the parties and of the subject matter, then the decree rendered in that State is void. Courts of this State may inquire into the proceedings, judgments and decrees of a court of another State to determine if that court had jurisdiction of the subject matter and of the parties, and there can be no question but that all judgments and decrees rendered by a court without such jurisdiction are void and have no binding effect upon the party aggrieved. There can be no other conclusion reached, in the face of this record, than that Field went to Nebraska for the express purpose of obtaining a divorce from his wife, and that in doing so he concealed his actions from her and practiced fraud upon the court by stating that he did not know her actual place of residence, when, in fact, he did know and was in constant communication with a part of the family. By his actions we have no hesitancy in stating that he was guilty of practicing fraud upon the courts of Nebraska and upon the public in general in obtaining his decree, and that the Nebraska court was without jurisdiction.''

The *Field* case was cited with approval in *Pembleton v. Illinois Commercial Men's Ass'n,* 289 Ill. 99, 103, and they use this language: ''It appears to be suggested that the provision of the Federal constitution requiring that full faith and credit shall be given in each State to the judicial proceedings of every other State, and the act of Congress passed in pursuance thereof, prevent an inquiry into the jurisdiction of the court by which the judgment offered in evidence was rendered.

It has been held by the Federal courts that the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that they did exist; that want of jurisdiction may be shown either as to the subject matter or the person. (*Thompson v. Whitman,* 18 Wall. 457; *Simmons v. Saul,* 138 U. S. 439; *National Exchange Bank v. Wiley,* 195 id. 257.) This court has laid down a similar rule that the courts of this State may inquire into the proceedings, judgments or decrees of a sister State to determine whether the court had jurisdiction of the subject matter or the parties. (*Field v. Field,* 215 Ill. 496; *Forsyth v. Barnes,* 228 id. 326.)"

*People v. Sterling,* 357 Ill. 354. In discussing what judgments may be collaterally attacked or when a judgment may be collaterally attacked, the courts have this to say: "If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding upon the parties and on every other court unless reversed or annulled in a direct proceeding, and is not open to collateral attack." In *Wyman v. Hageman,* 318 Ill. 64, we said: "Where the court has jurisdiction of the parties and of the subject matter in controversy and enters a final order or decree, and that order or decree is not appealed from, it cannot thereafter be collaterally attacked." And in the recent case of *Woodward v. Ruel,* 355 Ill. 163, we used the following language: "The judgment of a court which has jurisdiction of the subject matter and of the parties and possesses the power to render the particular judgment,

even though erroneous, is immune from collateral attack.

"Notwithstanding these authorities and this well established principle, the appellant contends that because the decree in the Sangamon County Circuit Court was procured by fraud it must be treated as a nullity. In considering this point it must be borne in mind that there are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect. One of the earlier cases in this State on the point is *Caswell v. Caswell,* 120 Ill. 377, which cites the case of *Greene v. Greene,* 2 Gray, 361, hereinabove quoted from, and also the case of *Edson v. Edson,* 108 Mass. 590. The rule is laid down as herein stated."

In *Van Dyke v. Illinois Commercial Men's Ass'n,* 358 Ill. 458, 461, the court states: "We have held that the record of a judgment rendered in another State may be questioned as to the existence of facts recited therein which were necessary to give the court jurisdiction. If it is made to appear that such facts did not exist the judgment will be held to be a nullity. It may be shown that there was a want of jurisdiction either of the subject matter or of the person. (*Pembleton v. Illinois Commercial Men's Ass'n,* 289 Ill. 99; *Field v. Field,* 215 id. 496; *Forsyth v. Barnes,* 228 id. 326.) This same rule has been laid down in *Thompson v. Whitman,* 18 Wall. 457, *Simmons v. Saul,* 138 U. S. 439, and *National Exchange Bank v. Wiley,* 195 id. 257. Bound up with

the question as to what judgments shall receive 'full faith and credit,' is the question of 'due process of law' under the fourteenth amendment to the constitution of the United States. If the judgment was rendered without due process of law it is not entitled to the benefit of section 1, of article 4, of the constitution of the United States, which requires that 'full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State.' "

The case of *People v. Rogers,* 348 Ill. 322, was a prosecution for perjury against Wilfred A. Rogers in falsely swearing that he was a resident of Cook county in procuring a divorce from his wife in that county. Among other things, the court says: "Where a decree of divorce is granted upon false testimony concerning the residence of one of the parties; the decree is void as to such parties. . . . If the court did not have jurisdiction of the person of his wife she might attack a decree anywhere directly or collaterally." Among other cases cited with approval were *Field v. Field, supra.*

Our Appellate Courts have considered the same question in *Knowlton v. Knowlton,* 51 Ill. App. 71; *Dunham v. Dunham,* 57 Ill. App. 475; *Wynn v. Wynn,* 254 Ill. App. 254; *Janssen v. Janssen,* 269 Ill. App. 233.

The appellant in this case in point 2 of her argument charges that the appellee is guilty of laches in not asserting her right prior to the death of Philip Goldberg. (The charge is made that Ellis Goldberg, the son, is an interested party in this suit, but we find nothing in the record to sustain this charge.) Minnie Libby Goldberg was an insane person, prior to the time Philip Goldberg fraudulently obtained his decree of divorce from her, and has remained an insane person to the present time. An insane person cannot be held accountable for any apparent negligence of laches or

delay in seeking redress, through the courts or otherwise, for any wrong that may have been done her in respect to her property, and she is not affected by the statute of limitations, which but for her insanity would bar her rights. *Dodge v. Cole,* 97 Ill. 338; *VanBuskirk v. VanBuskirk,* 148 Ill. 9.

It is our conclusion that the circuit court of Lake county properly found that Philip Goldberg, at the time he filed his suit for a divorce and the hearing of the same was not a resident of Cook county, Illinois, but was a resident of Lake county, Illinois, and that he perpetrated a fraud upon said court in procuring said divorce, and that said court did not have jurisdiction of the parties and the subject matter of the suit, and that the same was null and void.

The court, in his opinion, found that Harry C. Kinne, the attorney and guardian *ad litem,* appointed by the court to represent Minnie Libby Goldberg, an insane person, was guilty of perpetrating a fraud upon the court. Philip Goldberg in his petition for a divorce, represented that he had been a bona fide resident of Cook county, and of the State of Illinois for more than one year, and during the hearing of the case, he testified that he had been a resident of Cook county for three years and more and a resident of the State of Illinois for 25 years or more. When a client comes to an attorney and represents to him that he is a bona fide resident of the county, the attorney has the right to rely upon his statement as being true, without investigating the truthfulness of the statement, unless there are facts and circumstances which would lead the attorney to believe that his statement was false. There is nothing in the record in this case showing any lack of good faith on the part of the attorney for Philip Goldberg.

Harry C. Kinne, the attorney and guardian *ad litem* of Minnie Libby Goldberg, was granted leave to intervene in this proceeding to show that he was neither guilty of any improper professional conduct, nor had he aided or abetted in any way the fraud perpetrated upon the circuit court of Cook county. We find nothing in the record that sustains this charge. Mr. Kinne was appointed guardian *ad litem* to represent Mrs. Goldberg and he filed his answer setting forth that Minnie Libby Goldberg was an insane person and confined in an asylum at Elgin, Illinois. He denied each and every material allegation in the bill for divorce and called for strict proof of the same. There is no proof nor intimation in the record that Mr. Kinne had any knowledge or reason to believe that Philip Goldberg was not a bona fide resident of the city of Chicago and Cook county. The trial court erred in finding the attorney guilty of perpetrating a fraud on the court.

That part of the decree which finds Harry C. Kinne, the attorney who appeared as guardian *ad litem* for Minnie Libby Goldberg guilty of perpetrating a fraud on the court, at the time of the divorce proceeding, is hereby reversed. The decree in all other respects is affirmed.

*Affirmed in part and reversed in part.*

Dove, J., dissenting.