**George H. Steffens, Appellee, v. Bertha M. Steffens, Appellant.**

**Gen. No. 44,551.**

(NIEMEYER, J., dissenting.)

600

Opinion filed October 31, 1949.   Rehearing denied November 10, 1949.
Released for publication November 21, 1949.

Louis S. Gunn, of Chicago, for appellant.

Paul F. Koenig, of Chicago, for appellee; Paul T. Barnes, of Chicago, of counsel.

Mr. Presiding Justice Tuohy delivered the opinion of the court.

Defendant, on May 7, 1948, filed her petition to vacate a decree of divorce entered for plaintiff on July 9, 1946. From an order sustaining plaintiff's motion to strike the petition, this appeal is taken.

Plaintiff contends that defendant's petition to vacate the decree, after term time, charging fraud and perjury committed on the trial in attempting to establish residence, comes too late.

Defendant maintains that because of the alleged fraud the court acquired only colorable jurisdiction over the parties and subject matter and that a decree so procured can be set aside on motion at any time for want of jurisdiction.

Plaintiff filed his complaint for divorce on October 1, 1945, charging desertion and alleging residence in Cook county for more than a year preceding the filing of the complaint. Defendant's answer neither admitted nor denied the residence of the plaintiff at the time of the filing of the bill, but demanded strict proof of this fact. Other questions raised by pleadings are not germane to this appeal. On July 9, 1946, a hearing was had in the superior court of Cook county, the defendant failing to appear either in person or by counsel, and a decree of divorce was entered. On September 23, 1946, a petition was filed by attorney for defendant seeking to vacate the decree of divorce and

for leave to present a defense, alleging that the failure to appear and support the allegations of the answer was due to the illness of counsel. On October 7, 1946, an order was entered denying defendant's motion.

On May 7, 1948, defendant filed a verified petition again seeking to vacate the decree of July 9, 1946, and to reinstate the cause for trial, alleging in substance that plaintiff was not a resident of Cook county, Illinois, for one year prior to October 1, 1945, again setting up neglect of counsel as the reason for the failure to appear and defend. Plaintiff filed a motion to strike, asserting that, the issue of nonresidence having been raised by the original answer and having been passed upon by the court and no appeal having been taken, the judgment order is final.

For a determination of the case it is only necessary to decide (1) whether or not residence was at issue under the pleadings in the case, and (2) whether or not jurisdiction is subject to attack some years after the court by decree found it had jurisdiction, by motion to set aside such finding on the ground that it was based on fraud and perjury.

█ The complaint made proper jurisdictional allegation as to residence for more than one year immediately prior to the filing of the complaint. The answer neither admitted nor denied this fact but demanded strict proof. Such allegation and counter allegation are sufficient to raise the issue of residence. *Dean v. Dean,* 381 Ill. 514. The question of jurisdiction thus became one of fact for the trial court's determination. *Way v. Way,* 64 Ill. 406. No appeal was taken from this jurisdictional finding of the trial court within the time fixed by statute. In fact, nothing was done in connection with the matter from July 9, 1946, the date the decree was entered, until September 23, 1946, when the petition to vacate the decree was filed, which alleged that the defendant had a good defense on the merits and that the failure to advance such de-

fense was due to the illness of counsel. No challenge to the jurisdiction was made by this petition, and the first time the question arose was on May 7, 1948, when the proceedings hereinabove narrated were undertaken.

The fundamental rule with reference to the finality of judgments and decrees is well expressed in the case of *People v. Sterling,* 357 Ill. 354, in this language (p. 362):

". . . we find the rule to be firmly established in American jurisprudence that a judgment of a court of competent jurisdiction, having jurisdiction of the subject and the parties by legal process duly served, where no appeal, writ of error, *certiorari,* review or other legal process lies for revising, reversing or affirming such judgment, or where no such process is commenced by the party who would void the judgment in the mode and at the time prescribed by law, is conclusive upon the same parties in any other proceeding in law, in equity, or before any other judicial tribunal. . . ."

Defendant argues that jurisdiction cannot be presumed and can be questioned at any time. In support of this proposition defendant cites the cases of *Werner v. Illinois Cent. R. Co.,* 379 Ill. 559, and *Meyer v. Meyer,* 328 Ill. App. 408. The former case involved the question of the jurisdiction of a city court to hear a cause for personal injuries arising under the Federal Employers' Liability Act. It was urged that city courts have no jurisdiction over a case such as the one at issue where the cause of action arose outside the territorial limits of the city. It was there held that there being no constitutional or legislative authority to hear such a cause, the city court was without jurisdiction and its judgment was a nullity. The case is readily distinguishable from the instant one where the question of the court's jurisdiction depended upon a finding of fact of residence, an issue before the court which the court was empowered to determine. The

other case relied upon, *Meyer v. Meyer,* is a divorce case. There it was specifically held the decree did not find that the plaintiff was a resident of Cook county at the time that the suit was filed. The case was remanded with specific directions to make a finding on the question of residence. In the instant case the question of residence was before the court below, was passed upon, and residence was found by the decree. Moreover, in the instant case there was no presumption of jurisdiction, but the question was raised by the pleadings, considered on the trial, and resolved against the defendant. The fact that the defendant, by reason of her failure to appear at the trial, offered no evidence to challenge the proof of residence offered by plaintiff is beside the point on the question of jurisdiction. No fraud or duress is indicated as a reason for her failure to appear—only the neglect of counsel. That she is bound by the acts or omissions of her counsel is not questioned on this appeal.

It is further urged that the court had only colorable jurisdiction, by reason of false testimony, to hear the case and "its decree is void and subject to collateral attack." If we assume this to be a collateral attack, the authorities relied upon by defendant support a conclusion contrary to that urged. In the case of *People v. Sterling, supra,* the court, citing from the case of *Greene v. Greene,* 2 Gray, (Mass.) 361, said at page 362:

". . . In the case just cited the wife sought a divorce from her husband, alleging five years' desertion. She set forth the existence of a decree *a vinculo* obtained by her husband at a former term and averred that the decree was obtained by fraud and false testimony. She requested that the court hear evidence as to the fraud, collusion and false testimony by which the decree was obtained against her and that the same might be set aside and held for naught. In the course of the opinion the court said: 'But if a new

and original libel may be brought upon the ground that a former decree was obtained by false evidence, we see nothing to prevent the husband from bringing a third suit to reverse the decree of reversal on a suggestion and offer of proof that the decree of reversal was obtained on perjury, subornation of perjury and other fraud, and thus reverse the second decree and reinstate the original decree of divorce *a vinculo.*' ''

Again, at page 360, the court said:

''. . . We must therefore at the beginning of our inquiry determine whether or not it is true, as appellant contends, that fraud vitiates every transaction into which it enters, even to the extent of so far invalidating a decree of a court of competent jurisdiction that it can be held for naught by another court of equal, but no greater, jurisdiction when later called in question between the same parties, concerning the same subject matters and praying for the same relief. If such is the rule it must necessarily follow that the second litigation would be no more conclusive than the first had been, nor, for that matter, would the third or fourth, or any other number. The unqualified adoption of such a rule would be so disruptive of the orderly processes of our courts and so fatal to the well known principle that it is desirable that litigation should have an end, that we have examined the subject with some care. We find upon our examination that the rule is not as contended for . . . but quite the contrary.''

In somewhat similar language the Supreme Court of the United States expressed itself in the case of *Stoll v. Gottlieb,* 305 U. S. 165. At page 172 the court said:

''It is just as important that there should be a place to end as that there should be a place to begin litigation.''

The recent case of *Buck v. Buck,* 337 Ill. App. 520, decided by this court (Third Division), reviews a num-

ber of authorities on this subject and reaches a decision contrary to that here urged by defendant.

In the case of *Cullen v. Stevens,* 389 Ill. 35, which was a divorce case wherein the jurisdiction of the city court of Calumet City was challenged, the Supreme Court said (pp. 37, 38):

". . . A city court is a court of general jurisdiction within the limits of the city where located. It has jurisdiction to hear and determine divorce cases. Its records import verity and, in the absence of proof from its records, its decrees cannot be attacked collaterally, as its jurisdiction will be presumed. . . ."

We are of the opinion, therefore, inasmuch as the question of residence was a question of fact the same as any other material issue of fact in the case and was passed upon by the court and found by decree, which was not challenged by appeal, by bill of review, or by any other approved procedure, that the present appeal is without merit. For these reasons the order of May 25, 1948, of the superior court of Cook county sustaining plaintiff's motion to strike defendant's petition is affirmed.

*Affirmed.*

FEINBERG, J., concurs.

NIEMEYER, J., dissents. Jurisdiction to hear and determine divorce cases depends upon the grant of the statute and not upon the general equity powers of the court. *Ward v. Sampson,* 395 Ill. 353. Residence of the plaintiff in the state one year before instituting suit is a prerequisite to the filing of the complaint in cases like that before us. Section 2, statute on Divorce, Ill. Rev. Stat. 1947, ch. 40, par. 3 [Jones Ill. Stats. Ann. 109.170]; *Way v. Way,* 64 Ill. 406. False testimony as to the residence of the plaintiff is a fraud upon the court and gives only colorable jurisdiction of the case. *In re Estate of Goldberg,* 288 Ill. App. 203. Defendant's petition to vacate the decree is based on the

alleged false, fraudulent and perjured testimony of plaintiff and his witnesses as to plaintiff's residence in the State. The allegations of the petition as to this testimony must be taken as true on this appeal. *Aaron v. Dausch,* 313 Ill. App. 524, 532. This fraud invalidates the decree. In *People v. Sterling,* 357 Ill. 354, where plaintiff by complaint filed in Cook county sought to vacate and set aside a decree of the circuit court of Sangamon county, claiming that the decree was a nullity because of the alleged fraud of a former attorney general of the State in procuring the dismissal of his complaint for want of equity, the court said (364):

"In considering this point it must be borne in mind that there are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect."

A judgment procured by fraud, merely giving the court colorable jurisdiction, may be vacated at any time. *Barnard v. Michael,* 392 Ill. 130. Consent or acquiescence cannot confer jurisdiction of the subject matter. *Dunavan v. Industrial Commission,* 355 Ill. 444. In *Toman v. Park Castles Apt. Bldg. Corp.,* 375 Ill. 293, the court said:

"Whether the question of jurisdiction was raised in the lower court is immaterial. There can be no waiver of jurisdiction of the subject matter where the trial

court lacked jurisdiction to enter the order appealed from. (*Kudla v. Industrial Com.* 336 Ill. 279.)''

In the instant case it is immaterial that issue was joined as to the jurisdictional facts of the plaintiff's residence and that former counsel for defendant failed to assert the fraud now charged in a prior motion to vacate the decree in which he sought to excuse his failure to appear at the trial. The cause was heard as a default matter and there has never been a contest of the truth or falsity of the testimony as to plaintiff's residence in the State. A void judgment may be vacated at any time and the doctrines of laches and estoppel do not apply. *Ward v. Sampson, supra; Thayer v. Village of Downers Grove*, 369 Ill. 334.

To hold, as does the court, that defendant is without remedy because the decree ''was not challenged by appeal, by bill of review, or by any other approved procedure,'' is to deny all relief. The introduction of extraneous evidence is necessary to show that the testimony as to plaintiff's residence is false, fraudulent and perjured. Such testimony is admissible in proceedings to vacate a void judgment. *Herb v. Pitcairn*, 384 Ill. 237; *Riddlesbarger v. Riddlesbarger*, 324 Ill. App. 176, 187. It cannot be introduced on appeal. There is nothing in the record on which to predicate a right to a bill of review or a bill in the nature of a bill of review. *Wood v. First Nat. Bank of Woodlawn*, 383 Ill. 515, 521. What other ''approved procedure'' was open to defendant the court does not point out, and none is known to the writer of this dissent other than that followed by the defendant—the filing of a motion to vacate the decree. Almost without exception a motion to vacate is considered a direct attack on the decree. See 31 Am. Jur., Judgments, sec. 613, and cases collected in Words and Phrases (Perm. Ed.) Vol. 7, pp. 582–587. However, in *Barnard v. Michael*, 392 Ill.

130, it is stated that a motion to vacate becomes a collateral attack if made more than 30 days after entry of the decree. Whether the motion is a direct or collateral attack is immaterial because the judgment under consideration is vulnerable to collateral as well as direct attack. *Beck v. Lash,* 303 Ill. 549. Moreover, because of the nature of the fraud practiced on the court and because the State is a party to every divorce suit and vitally concerned that no fraudulent decree be entered, the diligence or lack of diligence of the parties is of no importance, and rules of procedure cannot and should not be permitted to prevent a thorough investigation of the charges made. Excerpts from the opinion in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U. S. 238, quoted with approval by this court in *Skelly Oil Co. v. Universal Oil Products Co.,* 338 Ill. App. 79, are persuasive. Meeting with opposition in the patent office, Hartford procured the publication in a trade journal of an article favorable to the patentability of its invention under the name of an apparently disinterested person and submitted the article to the patent office in support of its application; the article had in fact been prepared by agents of Hartford and the purported author paid a large sum for the use of his name; Hartford obtained the patent and later brought suit for infringement against Hazel; from an adverse decree in the district court, Hartford appealed and submitted the spurious article to the court in support of its contentions on appeal; the decree of the district court was reversed and Hartford's claims of infringement sustained; a number of years later proof of the spuriousness of the article used by Hartford in the patent office and before the court of appeal was revealed in an anti-trust prosecution; Hazel then presented its petition to the court of appeals to vacate its former judgment because of the fraud perpetrated on the court; the court of appeals refused to act; in reversing that court the Supreme Court said (245):

"Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. . . . we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals."

In answering the charge that the defendant Hazel had not been diligent, the court said (246):

"But even if Hazel did not exercise the highest degree of diligence, Hartford's fraud cannot be condoned for that reason alone. This matter does not concern only private parties. There are issues of great moment to the public in a patent suit. . . . Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

The responsibility of State courts in the preservation of the integrity of the judicial processes is equal to that resting upon the federal courts. Each court has like powers. The issues involved in a divorce suit are of no less moment to the public than those involved in a patent suit. The court as representative of the State in every divorce case is charged with the duty of preventing the granting of an improper divorce, and in

the performance of that duty disregards the pleadings and the established rules of procedure in equity and the indifference of the parties. In *Way v. Way*, 64 Ill. 406, where the sufficiency of the evidence to establish the residence of the plaintiff was involved, the court said, "Though a suit for a divorce, upon its face, is a mere controversy between the parties to the record, yet the public occupies the position of a third party. Society has an interest in every marriage, and it is the duty of the State, in the conservation of the public morals, to guard the relation, and to see that the status of all applicants for its dissolution should be established." Similar views were expressed in *Dunham v. Dunham*, 162 Ill. 589, and *Leland v. Leland*, 319 Ill. 426. In *Floberg v. Floberg*, 358 Ill. 626, 629, the court said:

"The State, as the sovereign, has an interest in maintaining the integrity and permanency of the marriage relation. . . . While the point is not raised by the appellant that the full period of one year's desertion had not run at the time of the filing of the cross-bill, yet it is the duty of the court in this character of a case of its own motion to examine that question and determine whether the complainant had deserted the appellee for the period of one full year prior to the filing of the cross-bill."

*Johnson v. Johnson*, 381 Ill. 362, was tried under the practice prevailing prior to the Civil Practice Act [Ill. Rev. Stat. 1949, ch. 110, par. 125 *et seq.;* Jones Ill. Stats. Ann. 104.001 *et seq.*]; defendant moved at the close of plaintiff's evidence to dismiss the complaint; this motion was denied; following the rule obtaining in general equity cases before the adoption of the Civil Practice Act defendant was denied the right to present her defense; on appeal she argued that, "because the State, representing society, is a party to all divorce cases, the rule which governs in other chancery matters is inapplicable." The Supreme Court said (372):

". . . under the discretionary power existing in the court, acting in a divorce proceeding and as a representative of the State, the court should have allowed defendant to withdraw her oral motion to dismiss plaintiff's complaint and should have permitted her to introduce such evidence as was pertinent to the issues formed by the pleadings."

The court also quoted from 2 Bishop on Marriage, Divorce and Separation (663, 664), where, in discussing the position of the State as a party to every divorce suit the author there said, "But this party, unlike the others, never loses a right by laches." In the latest Supreme Court case brought to our attention (*Ollman v. Ollman,* 396 Ill. 176) objection was made that the defense of condonation was not available to the defendant because not alleged in his answer. After stating that it has long been the general rule in chancery that an affirmative defense, to be availed of, must be set up in the answer, even though the defense appeared to be within the evidence, the court said (p. 181): "This is true as a general proposition, but an action for divorce involves interests other than those of the parties litigant." And continuing (p. 182): ". . . and so, whenever a defense comes out in the evidence, whether alleged or not, it is fatal to the proceeding. (*Johnson v. Johnson,* 381 Ill. 362.) This is true, not because the defendant has any just right to take advantage of a defense which he has not pleaded, but because the public interest is involved, and the conscience of the court, appealed to by this interest, does not permit the divorce unless the facts represented on the whole record justify it. If it were otherwise, divorces would be granted in cases where the evidence disclosed that no right to a divorce existed, and the public good, which suffers from every dishonest divorce and from every one not as well within the spirit of the statute as within its terms, would be sacrificed

to rules of procedure.'' And further (p. 183) the court said: ''Hence, whenever in the course of the trial, it appears that the action is collusive or barred, it is the duty of the court, regardless of the pleadings, fully to inquire, of its own motion, as the representative of the State, into the facts and circumstances and to act in accordance with the facts thus developed.'' This court, following these cases, has expressed similar views in *Mischler v. Mischler*, 333 Ill. App. 214, and *Borin v. Borin*, 335 Ill. App. 450. This duty of the court to safeguard the interests of the public does not end with the entry of the decree. Upon presentation of defendant's petition it was not only within the power of the court but it was the duty of the court to cause an investigation into the truth of the allegations respecting the testimony as to plaintiff's residence in the state prior to the filing of the complaint.

The order appealed from should be reversed and the cause remanded for further proceedings to determine the truth of defendant's charges.