*In re* ESTATE OF CHARLES L. SPENGLER, Incompetent—(THE FIRST NA-
TIONAL BANK OF SPRINGFIELD, Plaintiff-Appellee, *v.* LEMUEL L. SPENG-
LER *et al.,* Defendants-Appellants.)

(No. 11758;

Fourth District—June 6, 1973.

Pree & Pree, of Springfield, (Edward G. Pree, of counsel,) for ap-
pellants.

Brown, Hay & Stephens, of Springfield, (Elizabeth G. Frazee, of coun-
sel,) for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the
court:

The plaintiff bank, as conservator, sought to discover and recover
property of its ward, Charles L. Spengler, an adjudicated incompetent.
The trial court ordered the defendants to convey back to the estate of
the incompetent certain property that he had conveyed to them and

further ordered a refund of some $4000 that had been transferred by the incompetent to the defendants. The action of the trial court was pursuant to plaintiff's motion for summary judgment. We affirm.

On July 28, 1969, Charles L. Spengler filed a petition for the appointment of a conservator of his estate. In his own petition, he alleged that he was incompetent and physically incapable of managing his person or estate. The petition was set for hearing and notice was ordered given to the various listed persons. The hearing was scheduled for July 31, 1969, and was thereafter continued to August 6, 1969.

The next matter of record is a special appearance and objection to jurisdiction filed by an attorney for Charles L. Spengler. In that special appearance it is alleged that the circuit court on August 6, 1969, ordered that the petition be dismissed after one week unless one or more of the named children of Charles L. Spengler filed a petition for the appointment of a conservator. An affidavit of the defendant, Lemuel L. Spengler, was appended to this "special appearance" and is in agreement with those allegations.

Other children of Charles L. Spengler filed a motion to strike the special appearance and requested a hearing upon the original petition. That motion in addition alleged that Charles L. Spengler, since the date of the filing of the petition, "has been and still is mentally incompetent to make a decision upon withdrawing the petition." A medical report of a doctor and an affidavit of a nurse were appended to the motion.

Thereafter, after hearing, the circuit court determined Charles L. Spengler to be an incompetent and appointed the First National Bank as his conservator. The conservator by citation proceeding and by a petition to recover certain assets sought to recover the real estate and the $4000.

On March 12, 1971, the conservator filed a supplemental petition for citation and for recovery of property containing many allegations, including the allegation of the incompetency of the ward and the care of him by certain of his children. The supplemental petition also set forth the alleged asset situation of the alleged incompetent at the time of the filing of the petition for conservator, and alleged that certain real estate was conveyed by Charles L. Spengler to the defendants, subsequent to the date of the filing of the petition and allegedly at a price substantially less than its fair market value and under circumstances that would lessen the value of the incompetent's real estate by reason of a cutting off of access, and further that a power of attorney was executed by the incompetent to the defendant, Lemuel L. Spengler, and that an accounting rendered by said defendant to the conservator concerning the incompetent's monetary affairs showed a gift of some $4000 by the incompetent

to the defendants and that at all times the defendants knew, or should have known, that a petition for conservator had been filed and was pending and that a fiduciary relationship existed between the incompetent and the defendants. It is further alleged that the fair market value of the real estate conveyed was almost $20,000, wherein the purported purchase price paid by the defendants was $4000. The answer of the defendants admits the conveyance and admits the gift but it does deny the allegation as to the fair market value of the real estate.

Thereafter, the plaintiff filed a motion for summary judgment. In its motion, it alleges the filing of the petition and the appointment of the conservator on the basis of incompetency because of physical incapacity. The above recited transactions were alleged to have taken place between the date of filing the petition—July 28, 1969—and the date of adjudication of incompetency—June 26, 1970.

■■ The Illinois Probate Act (Ill. Rev. Stat., ch. 3, par. 126) provides in part:

"* * * Every contract made with * * * any person thereafter adjudicated incompetent after a petition has been filed for the appointment of a conservator, may be avoided * * *."

The term "contract" as used in that statute included deed. (*Burnham v. Kidwell,* 113 Ill. 425.) As there used, the term is likewise broad enough to include gift.

In *Sheldon v. Eakle,* 251 Ill. 369, 96 N.E. 246, the court construed an act to revise the law in relation to idiots, lunatics, drunkards, and spendthrifts (Hurds Stats. 1908, ch. 86, p. 1393) which provided: "Every contract made with an idiot, lunatic or distracted person before such finding, or with a drunkard or spendthrift made after the application of the appointment of a conservator, may be avoided, except in favor of the person fraudulently making the same." The court held that where after the application for an appointment of a conservator, a note and a mortgage were executed by the appellee, the note and mortgage were voidable under section 15 of the act, even though there was no fraud in the transaction. The court held that the quoted section of the statute was a complete defense to the bill to foreclose the mortgage. If this case were followed, the defendants would not be allowed to present proof that Charles L. Spengler was actually competent at the specific times of the transactions sought to be avoided.

In William M. James, 3 *Ill. Probate Law and Practice* (1951), sec. 126.1, at page 445, in regard to contracts made between the filing of a petition for conservatorship and the adjudication of incompetency, James interprets section 126 of the Probate Act as follows:

"* * * No special proof of insanity, mental illness, feebleminded-ness, mental deficiency, idiocy or imbecility is necessary here. It may be said that the verdict of the jury determining the incompetency thus has quasi retroactive power back to the moment when the petition for conservatorship was filed."

James also says in section 126.9 of 3 *Ill. Probate Law and Practice* (1951), pp. 472-473, that:

"(Section 126) protects the spendthrifts as well as any other person later adjudged incompetent by facilitating the avoidability of their transactions, making unnecessary any proof of their mental incapacity during the period indicated."

James's interpretation of section 126 would not allow proof of the mental condition of an incompetent at the time of specific transactions which took place after the filing of a petition for conservatorship.

The defendant cites *McGregor v. Keun* (1928), 330 Ill. 106, 161 N.E. 99, and *Kasbohm v. Miller* (1937), 366 Ill. 484, 9 N.E.2d 216. However, at the time of those cases, only contracts with spendthrifts and drunkards were voidable if executed between petition and adjudication (see Historical Note to ch. 3, sec. 126).

■■■ The obvious purpose of this section of the Probate Act and like predecessor statutes is to protect the estate of one adjudicated incompetent. From the date of the filing of the petition, the voidability of the contract is not dependent upon fraud or dissipation of the incompetent's estate.

■■ The trial court was correct in its determination that the record of the court cannot be amended, varied or impeached by recollection or bystander affidavit. *Woodward v. Ruel*, 355 Ill. 163, 188 N.E. 911.

Thus there was no issue as to any material fact presented by this record and accordingly the circuit court properly granted the plaintiff's motion for summary judgment and its action in so doing should be, and it is, affirmed.

Judgment affirmed.

SIMKINS and TRAPP, JJ., concur.