SPRINGFIELD MARINE BANK, Conservator of the Estate of Leonard L. Owens, *et al.*, Plaintiffs-Appellants, *v.* ALPHONSO BRADLEY, Ex'r of the Estate of Ella Bradley Owens, Deceased, Defendant-Appellee.

Fourth District   No. 14422

Opinion filed November 18, 1977.

Edward G. Pree and Michael W. Hogan, both of Pree & Pree, of Springfield, for appellants.

Dwight H. O'Keefe, III, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:
Renunciation of a will.
Can it be done here?
No. Too late.
Let us look at the timetable of events:

5-27-74    Ella Bradley Owens died testate.

6-14-74    Leonard Lenard Owens, her widower, petitioned to admit Ella's will to probate and for letters testamentary.

6-26-74    Letters were issued to him and on the same day he filed a verified application for inheritance tax consents, listing every financial account in which his late wife had an interest (except one).

6-27-74    Executor Owens prepared a detailed list of property missing from the marital home.

10-21-74   The executor filed a petition to recover property and to discover personal property bequeathed to him in his late wife's will. (This matter was resolved and no hearing was ever held.)

12-26-74   Mr. Owens' sister, Mattie Able, filed a petition to revoke his letters testamentary. (No hearing was ever held on this petition.)

12-26-74   The executor's sister, Mattie Able, on the same day filed a petition in another cause for the appointment of a conservator for Mr. Owens.

1-17-75    Summons in the conservatorship was served upon Owens.

1-29-75    Owens (through his attorneys, Pree & Pree) filed a demand for jury trial. (No further hearing was ever had in this conservatorship proceeding, and it remains pending.)

Jan.1975   Mr. Owens remarried.

5-23-75    Alphonso Bradley (brother of decedent) filed a citation to remove Owens as executor.

| 5-27-75 | Citation was served on Mr. Owens. |
| 6-19-75 | Owens resigned as executor. |
| 7-15-75 | Alphonso Bradley was appointed successor executor. |

* * *

| 5-27-76 | Illinois Inheritance Tax Return in the Owens estate was filed. |
| 7-19-76 | Mr. Owens, as surviving spouse of decedent, filed his verified petition for extension of time to file renunciation of her will, and also filed a proposed verified renunciation. |

* * *

| 12-8-76 | Owens' petition for extension of time to file renunciation was heard and taken under advisement, counsel being directed to submit briefs. |
| 1-27-77 | Petition for extension denied. |
| 2-18-77 | Owens filed a motion for reconsideration of said denial. |
| 3-11-77 | Petition for reconsideration denied. |
| 4-4-77 | Notice of this appeal was filed. |

(Parenthetically, after the institution of this appeal, Mr. Owens was declared incompetent and, upon motion allowed by this court, the conservators of his estate and his person—the Springfield Marine Bank and Eloise D. Owens—have been substituted as parties plaintiff.)

Appellate jurisdiction of this appeal is conferred by Supreme Court Rule 304(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(b)), since the order of the trial court sitting in probate finally determined a right of a party, namely Mr. Owens' right to renounce the will. The sole issue presented is whether the trial court improperly denied leave to file a renunciation of the will 19 months after the running of the statutory period for renunciation.

■■ The law (Ill. Rev. Stat. 1973, ch. 3, par. 17) clearly provides that a renunciation *shall* be filed within seven months after the admission of the will to probate *or* "within such further time as may be allowed by the court if, within 7 months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate."

■■ If we consider the 7-month period of the Probate Act as analogous to a statue of limitation, then the running of the period may be tolled by a

finding of incompetency. In *In re Estate of Goldberg* (1937), 288 Ill. App. 203, 5 N.E.2d 863, *cert. denied* (1937), 302 U.S. 693, 82 L. Ed. 535, 58 S. Ct. 12, the incompetent widow was successful in her collateral attack on a divorce decree obtained by her husband:

> "Minnie Libby Goldberg was an insane person, prior to the time Philip Goldberg fraudulently obtained his decree or divorce from her, and has remained an insane person to the present time. An insane person cannot be held accountable for any apparent negligence of laches or delay in seeking redress, through the courts or otherwise, for any wrong that may have been done her in respect to her property, and she is not affected by the statute of limitations, which but for her insanity would bar her rights. *Dodge v. Cole*, 97 Ill. 338; *VanBuskirk v. VanBuskirk*, 148 Ill. 9." 288 Ill. App. 203, 212-13, 5 N.E.2d 863, 867.

Also, in *Proehl v. Leadley* (1967), 86 Ill. App. 2d 472, 230 N.E.2d 516, the court stated that an incompetent person or a person alleged to be incompetent is a ward of the court and is entitled to a special protection of the court whenever the rights of such incompetent may be affected. As defendant notes, however, the incompetence of the ward in *Proehl* was not disputed. (A conservator was appointed and his appointment was challenged because of a possible conflict of interest. The appellate court held that there was no adverse interest shown by the record and no reason existed to remove the conservator.)

Plaintiff points to *Schaffenacker v. Beil* (1925), 320 Ill. 31, 150 N.E. 333, and *In re Stith's Estate* (1970), 45 Ill. 2d 192, 258 N.E.2d 351, as ameliorating the harshness of the rule against late renunciations. In *Smith*, the widow was allowed three extensions of time for renouncing. However, the petitions for extension alleged the existence of pending litigation, as contemplated by the statute. Further, the first extension order was entered within the statutory period, and the second and third were each entered before the last preceding order expired. In *Schaffenacker*, the will was admitted to probate on April 19, 1921, and the widow filed her renunciation September 17, 1921. The issue was whether she had made an equitable election to take under the will by receiving rents so as to estop her from renouncing. The court held that her receipt of the rent was not shown to be an act under the will, and was equally consistent with renunciation.

The successor executor counters with *Hunter v. DeMay* (1970), 124 Ill. App. 2d 429, 259 N.E.2d 291. Defendant in that case was enjoined from renouncing his wife's will because he had lived on property devised to him for a considerable period of time after his wife's death, and the court deemed this an election. Defendant was "not an astute individual," apparently could not read, but *was* mentally competent.

Plaintiff then refers us to the case of *In re Lightner's Estate* (1967), 81 Ill. App. 2d 263, 225 N.E.2d 417, as supportive of his position. In that case the surviving spouse gave up his spouse's award and his right to renounce and agreed to pay his wife's debts and the greater portion of the funeral expense in exchange for his wife's ring and watch. But—*when* he renounced—he had no knowledge that his wife had executed a will and he was not told of its contents by the nominated executor. He signed the agreement without being told he had a right to renounce and without knowing the contents of the will. The court further held that the executor breached a fiduciary relationship that existed between himself as executor and the surviving spouse. In the instant case no such fiduciary relationship existed as the executor and the surviving spouse were the same individual. In *Lightner*, the surviving spouse signed the agreement giving up his rights three days after the funeral, while under emotional strain, while his vision and hearing were impaired and after taking "numbutals." In our case, no allegation of infirmity was made until six months after letters testamentary were issued, and those allegations have never been proved.

In yet another case cited by plaintiff, *In re Spengler's Estate* (1973), 12 Ill. App. 3d 30, 197 N.E.2d 401, decided by this court, a gift made after a petition for appointment of conservator was filed (but before the adjudication of incompetency approximately one year later) was held voidable. The court further held that "a fiduciary relationship existed between the incompetent and the defendants." The court went on to point out that no proof of fraud was necessary (nor was proof that the incompetent was lucid at the time the gift was made introducible), the key factor being the adjudication of incompetency. The instant case is clearly distinguishable in that there had been no adjudication of incompetency. Here there was nothing to void, the sole question being whether—by virtue of a petition filed by a nonresident of Illinois (Mattie Able of Kentucky) one month prior to the expiration of the statutory period—the probate court can exercise its equitable powers 19 months later.

Mr. Owens was appointed executor of his wife's estate on June 26, 1974. On that same day he verified the contents of the application for State inheritance tax consents. He was able to inform counsel of the amounts and whereabouts of his deceased wife's assets. In addition, on June 17, 1974, a letter from his attorney (Mr. Howarth) was directed to the attorney for his wife's brothers and mother, outlining 11 specified items of personal property known to Mr. Owens and found missing from the marital home. And on the second page of that letter, his counsel specifically refers to the possibility of renouncing the will and receiving one-half the personal property!

Even in his verified petition to recover property Owens was aware of

virtually every asset of the estate. (After the citations were issued, nothing further transpired and the matter was amicably settled between plaintiff and the decedent's brothers and mother.) Mr. Owens knew of every piece of real estate, every financial account (except one $2,000 savings account), every possible item of personal property. Nothing was later discovered by the successor executor save that single savings account. Defendant Bradley had no idea what his sister owned, and, in fact, sent letters to every financial institution in the city to determine what she owned.

■■ Owens knew what the assets were, his counsel had clearly considered the course of renunciation, and—in addition—plaintiff acted in a manner consistent with a decision to accept the benefits of his wife's will, thereby electing to take under the will. Plaintiff is bound by his decision. *Remillard v. Remillard* (1955), 6 Ill. 2d 567, 129 N.E.2d 744; *DeRonchi v. Northern Trust Co.* (1st Dist. 1937), 292 Ill. App. 136, 10 N.E.2d 975.

Several salutary dates leap out of our timetable here. The will was admitted June 26, 1974; the 7-month statute of limitations expired January 26, 1975; on July 19, 1976, the petition for extension of time to renounce was filed—19 months late!—and Mr. Owens was finally adjudicated an incompetent 32 months after the statute of limitations had run its course and after this case was well into the mill of the appellate process.

■■ Furthermore, through his attorneys in the instant cause, he apparently contested any allegation of incompetency by virtue of the jury demand filed on his behalf shortly after the earlier conservatorship proceedings was commenced. And in addition to challenging the original petition for conservatorship, he has conducted his affairs since the filing of the petition in a manner inconsistent with that of an incompetent. He has married, he negotiated checks from the estate checking account until May of 1975 (when he covered a $10 overdraft and closed the account) and has filed verified pleadings in the instant cause.

In short, plaintiff has argued: that there were "special circumstances" here to warrant an enlargment of time to renounce; that the pleadings raised a presumption of incompetency; that the probate court had a duty to make further inquiry into the question of competency when Owens filed his petition for extension; and that the trial court should have advised Owens of his right to renounce.

We reject these arguments—the time has run, no statutory tolling occurred, no equitable extension is applicable. There should be an end in all things. We have reached it here.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.